**Richard P. LAVIN, Plaintiff-Appellant,**

v.

**John O. MARSH, Jr.,\* Secretary of the Army of the United States, and The United States Army, Defendants-Appellees.**

No. 79–4163.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1980.

Decided May 15, 1981.

Clifford Alexander is effected by Rule 43(c) of the Federal Rules of Appellate Procedure.

Joseph W. Cotchett, Cotchett, Hutchinson & Dyer, San Mateo, Cal., for plaintiff-appellant.

George Christopher Stoll, Asst. U. S. Atty., San Francisco, Cal., for defendants-appellees.

Before KILKENNY and CHOY, Circuit Judges, and GRANT,** District Judge.

CHOY, Circuit Judge:

I. *Introduction*

Richard P. Lavin was a 53-year-old lieutenant colonel in the United States Army Reserve who faced mandatory removal from active service because of an age-based

** The Honorable Robert A. Grant, Senior United States District Judge for the Northern District of Indiana, sitting by designation.

statutory years-of-service limitation. Lavin sought a district court injunction to prevent his removal and to require that the Secretary of the Army review his petition for relief from the mandatory removal provision. The district court found that while Lavin's claim was deserving of sympathy, it was not supported by statute or by equitable principles. We agree and affirm the district court's summary judgment in favor of the defendants.

## II. *Facts*

Richard Lavin is a World War II combat veteran with an outstanding military record. In 1963, at age 38, Lavin re-enlisted as a commissioned officer in the United States Army Reserve, Judge Advocate General Corps. His superiors enthusiastically commended Lavin's performance and his contribution to the Army Reserve. Throughout his 17 years of service in the Reserve, Lavin participated in training and educational programs to improve his ability to serve the Army, and to gain points toward retirement benefits.

In 1977, Lavin was notified that he would be removed from active status on January 4, 1978, 30 days after his 53rd birthday, and 17 months short of the period required to obtain pension benefits. The record shows that Lavin could have continued to serve in an exemplary manner for those remaining 17 months had he been allowed to do so.

Lavin's removal was pursuant to 10 U.S.C. § 3853. Under that section, Lavin, as a 53-year-old lieutenant colonel, was deemed to have 28 "years of service," thus mandating removal. In fact, Lavin had served 17 years. The statute, however, computed years of service as "the number of years by which his age exceeds 25 years." This is known as the "age 25 rule."

Lavin petitioned the Secretary of the Army (the Secretary) to allow him to continue to serve. The petition was summarily dismissed, not on the merits, but on the

ground that the Secretary had no authority to grant relief from mandatory years-of-service removal provisions.

Lavin sought injunctive relief to force the Secretary to review his petition. The district court found that Lavin had been induced to join the Reserve by recruiters' indications that he would be eligible for retirement benefits.[1] The district court held, however, that this inducement did not rise to the level required to estop the Army from denying Lavin benefits. The court also held that the Secretary was not statutorily authorized to retain reservists who, like Lavin, were subject to mandatory years-of-service removal.

## III. *Questions Presented*

The questions presented on appeal are:

1. Whether the Secretary's authority, under 10 U.S.C. § 1003, to retain reservists otherwise subject to mandatory removal applies where removal is mandated by the age-based, years-of-service provisions of 10 U.S.C. §§ 3848, 3853.

2. Whether the Army is estopped from denying Lavin retirement benefits.

3. Whether Lavin properly preserved the question of age discrimination for appeal, and if so whether the provisions of the Age Discrimination in Employment Act, 29 U.S.C. § 633a, apply to Army reservists.

## IV. *Discussion*

### A. *The Secretary's Authority to Retain Reservists Subject to Removal Under 10 U.S.C. § 3848*

The statutory scheme which mandated Lavin's removal on first reading seems incredible. Nonetheless, this scheme was promulgated by Congress and this court is bound to follow its letter absent any indication that Congress intended otherwise.

---

1. Lavin submitted copies of his Army "DAF66" cards, which are apparently a part of Army personnel records. An early card indicates a mandatory removal date of "3˙Dec. 81" which

would have allowed Lavin the necessary length of time needed to obtain a pension. A subsequent card listed no removal date.

Lavin was a victim of the "age 25 rule" of 10 U.S.C. §§ 3848, 3853.[2] Section 3848 states that removal is required for certain mid-ranking officers, including lieutenant colonels, after 28 years of service. Under § 3853 the affected reservist who reaches the age which would put him 28 years past his 25th birthday, i. e., age 53, is automatically deemed to have served 28 years, even though, as in Lavin's case, his actual length of service is far less. Under this scheme, no lieutenant colonel ever reaches the mandatory retirement age of 60 which otherwise limits reserve officers below the rank of major general. See 10 U.S.C. § 3843. Either of two things will happen before the affected reservist reaches age 60: he will serve 28 years, or he will reach age 53. At age 53, he will be deemed to have served 28 years because of the age-25 rule. This is best illustrated by the equation $25 + 28 = 53$.

Thus Lavin was removed from active status because he reached age 53, the maximum age any lieutenant colonel reservist can reach under the age-25 rule. Accordingly, Lavin sought relief under 10 U.S.C. § 1003.[3] Under that section, the Secretary of the Army is authorized to retain a reservist who would otherwise face mandatory retirement because he has "passed the maximum age prescribed for his grade and classification." 10 U.S.C. § 1003. The Secretary rejected Lavin's petition on the ground that § 1003 did not apply to years-of-service removals. Lavin argues that his removal was in effect a maximum-age removal, hence he is entitled to review under § 1003.

Lavin protests the absurdity of labeling a maximum-age provision a years-in-service provision and thus denying § 1003 relief. If the Secretary's interpretation prevails, no lieutenant colonel will ever serve until age 60, and thus no lieutenant colonel will ever be eligible for the discretionary relief provided by § 1003 to officers of greater or lesser rank.

■ This result is so arbitrary as to suggest inadvertence. In interpreting the statute, however, we are bound by the intent of Congress. Congress has indicated its intent that the age-25 rule operate in the manner suggested by the Secretary.

■ The plain language of § 1003 states that it applies to maximum-age removals. The plain language of § 3848 states that the section provides for a years-of-service removal. Congress has created two categories of removals and the letter of the law places Lavin's removal in the years-of-service category, with no recourse to § 1003.

---

**2.** 10 U.S.C. § 3848(a) provides that:

(a) After July 1, 1960, each officer in the reserve grade of first lieutenant, captain, major, or lieutenant colonel who is not a member of the Retired Reserve shall, 30 days after he completes 28 years of service computed under section 3853 of this title—

(1) be transferred to the Retired Reserve, if he is qualified and applies therefor; or

(2) if he is not qualified or does not apply therefor, be discharged from his reserve appointment.

10 U.S.C. § 3853 provides that:

For the purpose of determining whether a reserve commissioned officer may be transferred to the Retired Reserve, or discharged, under this chapter, his years of service are the greater of—

(1) the sum of (A) his years of service as a commissioned officer of any component of the armed forces or of the Army without specification of component, (B) his years of service before June 15, 1933, as a commissioned officer in the federally recognized National Guard or in a federally recognized

commissioned status in the National Guard, and (C) the years of service credited to him under section 3353 of this title or section 23 of the Act enacting this section; and

(2) the number of years by which his age exceeds 25 years.

No service may be counted more than once. For a person credited with service under section 3353 of this title or section 22 of the Act enacting this section, no service before appointment may be counted.

**3.** 10 U.S.C. § 1003 provides that:

A reserve officer who has passed the maximum age prescribed for his grade and classification may, as prescribed by the Secretary concerned—

(1) be separated from the armed force concerned;

(2) be retained in, or transferred to, an active or inactive status; or

(3) upon his request, be retained in, or transferred to, a retired status. . . .

Congress has indicated that in this case form should prevail over substance. In the 1960 amendments to the Reserve Officer Personnel Act, Congress expressly recognized the hardship worked by the age-25 rule, and created an exception for reservists who had enlisted before enactment of the rule.[4] No provision was made for reservists who, like Lavin, enlisted after the enactment of the rule, perhaps because such individuals were presumed to enlist with knowledge of applicable retirement provisions.

Because Congress explicitly recognized the odd workings of the age-25 rule and chose to provide only limited relief, we are not free to reinterpret the statutory scheme. Section 1003 covers only maximum-age removals. Lavin's removal under § 3853, although it was age-based, was not a maximum-age removal within the meaning of § 1003. While the spirit of § 1003 is to provide relief to reservists forced to retire because of age, Congress, in providing special relief for a limited class of victims of the age-25 rule, has indicated that this spirit is not so generous as to encompass Lavin's petition.

### B. *Estoppel*

Even if Lavin is not entitled to statutory relief under § 1003, the question remains whether he is entitled to equitable relief. Lavin argues that the principle of equitable estoppel should operate to prevent the Army from denying his entitlement to benefits. Lavin claims, and we presume he is correct as this appeal lies from a summary judgment, that he was not aware of the age-25 rule until sometime in the early 1970's, and that he devoted 17 years of his life to the Reserve in anticipation of a comfortable retirement. Lavin notes that army

recruiters emphasized pension benefits in inducing his enlistment. The record contains correspondence pertaining to retirement points and educational requirements, which led Lavin to believe he was working toward pension benefits. Unlike later enlistees, Lavin did not sign a waiver form acknowledging the workings of the age-25 rule.

In this case what is not alleged is also significant. There is no suggestion that the recruiters deliberately and knowingly lied about Lavin's eligibility for pension benefits.[5] There is no suggestion that the regulations were unpublished or unavailable to Lavin, or that Lavin, a licensed attorney, could not read them and recognize his potential ineligibility for benefits. We are faced then with a case of Army default which lulled Lavin into the mistaken belief that he was eligible for pension benefits.

■ The doctrine of equitable estoppel is available if the following elements are present:

(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*United States v. Georgia-Pacific,* 421 F.2d 92, 96 (9th Cir. 1970) (citations omitted).

■ In addition, to invoke estoppel against the Government, the party claiming estoppel must show "affirmative misconduct" as opposed to mere failure to inform or assist. *Cf. Immigration and Naturalization Service v. Hibi,* 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973).[6]

---

4. *See* S.Rep.No.1613, 86th Cong., 2d Sess. 11 (1960), *reprinted in* [1960] U.S.Code Cong. & Admin.News 2497, 2507.

5. Were this a case of clearly unconscionable conduct on the part of the recruiters, a different analysis might apply. For reports of gross recruiter misconduct *see* R. Johnson, "Military

Recruiter Misconduct," 85 Case and Comm. 6, 1980 (citing reports of bogus draft notices, forged high school diplomas, and recruiter-induced intoxication).

6. We recognize that the question of whether a given set of facts justifies a finding of "affirmative misconduct" is subject to debate. This

The district court found that although Lavin was induced to join the Reserve by recruiters' representations, such conduct did "not rise to the level necessary to invoke estoppel against the Government."

As a starting point of our analysis we note that the Government is not an ordinary defendant. This court has cautioned restraint in the application of estoppel against the Government:

> We recognize the force of the proposition that estoppel should be applied against the Government with utmost caution and restraint, for it is not a happy occasion when the Government's hands, performing duties in behalf of the public, are tied by the acts and conduct of particular officials in their relations with particular individuals.... Indeed the tendency against Government estoppel is particularly strong where the official's conduct involves questions of essentially legislative significance, as where he conveys a false impression of the laws of the country. Obviously, Congress's legislative authority should not be readily subordinated to the action of a wayward or unknowledgeable administrative official.

*Schuster v. Commissioner,* 312 F.2d 311, 317 (9th Cir. 1962).

█ Persons dealing with the government are charged with knowing government statutes and regulations, and they assume the risk that government agents may exceed their authority and provide misinformation. *See Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947). The pension rules applicable to Lavin may appear irrational, but they were congressionally mandated and they were clearly in effect at the time of Lavin's appointment. Unfortunately, Lavin chose trust over caution and he never attempted to confirm his eligibility.

The right to military pension benefits derives from statute rather than from contract. Congress has delineated the circumstances under which pensions shall be awarded, and we are reluctant to use our equitable powers to encroach upon the legislative domain. *See Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 4, 92 L.Ed. 10 (recognizing "the duty of all courts to observe the conditions defined by Congress for charging the public treasury").

█ We find that the facts in this case do not justify such an extraordinary exercise of judicial power. While the Army's acts which led to Lavin's mistaken belief may be labeled negligent, we do not find in the facts of this case the kind of affirmative misconduct which would justify the application of equitable estoppel. There is no pervasive pattern of false promises here. Rather, the record shows a failure on the part of the Army to determine clearly La-

court has had occasion to address this question in the past, and a review of the cases suggests that each turns on its own particular facts and circumstances. *See, e. g., Santiago v. Immigration & Naturalization Service,* 526 U.S. 488, 493 (9th Cir. 1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976) (en banc immigration decision finding no estoppel, and recognizing that while the modifier "affirmative" suggests a distinction between nonfeasance and misfeasance, "these are slippery terms"); *United States v. Wharton,* 514 F.2d 406, 412 (9th Cir. 1975) (finding estoppel applicable in a public lands case, where defendants "complain of affirmative misconduct on the part of government officials who gave them incorrect information"); *Sun Il Yoo v. Immigration & Naturalization Service,* 534 F.2d 1325, 1329 (9th Cir. 1976) (finding that Government conduct "analogous the the entrapment of a criminal defendant" constitutes affirmative misconduct); *California Pacific Bank v. Small Business Administration,* 557 F.2d 218, 225 (9th Cir. 1977) (finding "under these circumstances that the SBA did not engage in ... 'affirmative misconduct' ").

In the instant case we do not attempt to set forth an all-purpose test to detect the presence of affirmative misconduct. Rather, we review the facts and ask whether under all of the circumstances affirmative misconduct has occurred.

vin's pension eligibility status or to counteract any misunderstanding. A mere failure to inform or assist does not justify application of equitable estoppel. *See Immigration and Naturalization Service v. Hibi*, 414 U.S. at 8–9, 94 S.Ct. at 21–22.

While Lavin was perhaps justified in accepting his recruiters' representations that benefits were available, before invoking the doctrine of estoppel we ask whether the citizen dealing with the government has acted diligently to protect his own interests. Lavin apparently did not attempt to confirm the recruiter's representations by either reading the mandatory retirement provisions, or by requesting a written statement setting forth his eligibility. The benefits were obviously important to Lavin and yet for the better part of his reserve career he never sought to obtain more than the recruiters' representations, a handwritten note on his DAF66 card, and correspondence incidentally referring to retirement points. These indications from the Army were not entirely misleading since if Lavin had obtained a higher rank he may not have been subject to the age-25 rule.

While the equities favoring Lavin are strong, they do not override our great reluctance to disrupt a congressionally mandated scheme of mandatory retirement and pension eligibility. Under the facts of this case, we decline to apply the doctrine of equitable estoppel against the government.

## V. *Conclusion*

We hold that 53-year-old lieutenant colonels in the U. S . Army Reserve who are removed from active service under 10 U.S.C. §§ 3848 and 3853 are not entitled to petition the Secretary of the Army for discretionary relief under 10 U.S.C. § 1003. We further find that the facts in this case

do not indicate that the Army should be estopped from denying Lavin pension benefits.

We do not reach the issue of whether age-based mandatory removals of reservists are subject to the Age Discrimination in Employment Act, 29 U.S.C. § 633a, as this issue was not properly presented below.[7] *See Confederated Tribes and Bands of the Yakima Indian Nation v. Washington*, 608 F.2d 750, 752 (9th Cir. 1979); *Pegasus Fund, Inc. v. Laraneta*, 617 F.2d 1335, 1342 (9th Cir. 1980).

It is indeed unfortunate that neither Congress nor the United States Army has seen fit to provide some avenue of relief for reservists in Lavin's position. The result reached here does not reflect this court's approval of the treatment afforded Lieutenant Colonel Lavin or of the curious statutory scheme which requires the removal of a dedicated and competent 53-year-old reservist. We find only that there is no legal ground for compelling the Secretary to act in this case. Like the district court, we are troubled by this result, but we are compelled by the law as it now stands to AFFIRM the judgment below.

---

7. We note that at least one district court would find the ADEA inapplicable in similar circumstances. *See Simpson v. United States*, 467 F.Supp. 1122, 1126–28 (S.D.N.Y. 1979) (finding that "the ADEA does not cover bona fide military personnel actions under the Reserve Officer Personnel Act," even where civilian employment is affected thereby).