In re Brian F. HOWELL and Kimberly A. Howell, Debtor(s).

UNITED STATES of America, Appellant(s),

v.

Brian F. HOWELL and Kimberly A. Howell, Appellee(s).

BAP No. ID 90–1103–AsPV.
Bankruptcy No. 88–01411.
Adv. No. 88–0289.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 14, 1990.

Decided Nov. 6, 1990.

Thomas Moore, Washington, D.C., for the U.S.

No appearance by appellee's counsel.

Before ASHLAND, PERRIS and VOLINN, Bankruptcy Judges.

## OPINION

ASHLAND, Bankruptcy Judge:

The Internal Revenue Service (IRS) appeals from the court's order concluding that the IRS was estopped from asserting that the debtors' 1984 income taxes were not assessed on April 16, 1987 for purposes of the dischargeability of the taxes, and consequently that the debtors' tax liability to the IRS for the 1984 tax year was discharged. We reverse.

## FACTS

The debtors Brian F. and Kimberly A. Howell filed their Chapter 7 petition on May 13, 1988. Approximately one week prior to filing, Mr. Howell met with an attorney, Mr. Alban, regarding the debtors' financial difficulties. At that meeting, Mr.

Alban requested that Mr. Howell determine the date that the debtors' 1984 income taxes were assessed. Mr. Howell testified that Mr. Alban explained the importance of the assessment date. Mr. Alban told Mr. Howell that the taxes had to have been assessed outside of a certain period of time from the date of filing in order to take advantage of certain Code provisions. Under 11 U.S.C. § 523(a)(1)(A), a tax of the kind specified in § 507(a)(7) is non-dischargeable. Section 507(a)(7)(A)(ii) addresses the priority for taxes assessed within 240 days before the date of the filing of the petition. Therefore although taxes assessed within 240 days of the petition date are non-dischargeable, those assessed outside of that 240-day period are dischargeable.

Mr. Howell testified that he contacted the IRS by calling an 800 number that was provided on a form sent to him by the IRS which related to the 1984 taxes. Mr. Howell did not recall who initially answered the phone at the IRS office. However, he did recall speaking to a female IRS employee who gave him the assessment date after he gave her his name, social security number, and the date of the taxes in question. The employee told Mr. Howell that the 1984 taxes were assessed on April 16, 1987. Mr. Howell testified that after obtaining the assessment date, he made a note of the information on forms that were turned in to Mr. Alban's office and then did a quick calculation to see if the given assessment date fell outside of the 240-day period. After realizing that the date fell outside of the time period, Mr. Howell gave the information to his attorney to assist in the filing of he and his wife's Chapter 7 petition.

After the debtors were discharged and their case was closed, the IRS commenced collection action on the $2500 tax liability in question. The debtors' attorney called the IRS to find out why the taxes were being collected and was told that they were non-dischargeable because they had in fact been assessed on October 5, 1987, instead of on April 16, 1987 as the debtors had been led to believe. The debtors then filed a complaint, presumably under § 523(a)(1)(A), for a determination that the

1984 tax liability was dischargeable. The debtors alleged that the IRS should be estopped from using the October 5, 1987 date for purposes of determining the dischargeability of the tax debt and should be bound by the April 16, 1987 date given to Mr. Howell by the IRS employee. The debtors alleged that if they had been given the correct assessment date by the IRS, they would have waited an additional month to file their petition so that the taxes in question would have been discharged. The debtors alleged that failure to estop the IRS would prevent them from receiving the fresh start the Code envisions.

In its answer the IRS alleged that the debtors' alleged reliance on the purported oral statement of an unidentified IRS employee was unreasonable. The IRS sought dismissal of the complaint.

A trial on the complaint was held on November 14, 1989. Mr. Howell testified on behalf of the debtors. In addition to testimony discussed above, Mr. Howell testified that if he had known the correct assessment date, he would have waited until early June of 1988 to file his petition, instead of filing on May 13, 1988, in order to have the taxes discharged. The parties agreed that the actual assessment date was October 5, 1987 and that the taxes would have been dischargeable if the true date of assessment had been in April of 1987. Therefore the only real issue at the trial was whether the IRS was bound by the theory of equitable estoppel.

After receiving post-trial memoranda from the parties, the court issued its memorandum of decision. Although neither party had addressed the question of whether the court had the authority to retroactively declare the debt non-dischargeable, the court found it necessary to address the question. The court found the matter appropriate for relief under § 105(a). That section allows the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). We note that it was probably unnecessary for the court to invoke its powers under § 105(a),

since Bankruptcy Rule 4007(b) provides that a complaint under § 523(a)(1)(A) may be filed at any time and that a case may be reopened without payment of an additional filing fee for the purposes of filing a complaint under that subsection.

In its memorandum of decision, the court noted the traditional elements of estoppel as outlined in *United States v. Georgia–Pacific Co.*, 421 F.2d 92, 96 (9th Cir.1970):

> (1) The party to be estopped must know the facts;
>
> (2) The party to be estopped must intend that his conduct shall be acted upon or must so act that the party asserting the estoppel has the right to believe it is so intended;
>
> (3) The party asserting estoppel must be ignorant of the facts; and
>
> (4) The party asserting estoppel must rely on the conduct to his injury.

The IRS had conceded elements one, three and four but asserted that the debtors failed to meet their burden on the intent element. The court however concluded that the debtors had met their burden on the intent element.

The court noted the general rule that equitable estoppel is generally not available as a defense against the government, but that it is applied "where justice and fair play require it and if the effects of estoppel do not unduly damage the public interest." *Johnson v. Williford*, 682 F.2d 868, 871 (9th Cir.1982). According to the court, the injustice that would result was that the debtors would not receive the fresh start intended by Congress. Applying equitable estoppel to the government in this instance would not unduly damage the public interest, since the government would merely not be collecting taxes from the debtors which in all probability would have been discharged had the correct assessment date been afforded. Since the IRS was estopped from asserting that the correct assessment date was not April 16, 1987, the court concluded that the debtors' tax liability to the IRS for the 1984 tax year was discharged. The judgment incorporating the court's findings of fact and conclusions of law set forth in the court's memorandum

of decision was entered on January 12, 1990. The IRS filed a timely notice of appeal on January 22, 1990.

## ISSUE

Whether the court erred in applying the doctrine of equitable estoppel to the IRS, when such application allowed the debtors' otherwise non-dischargeable income taxes to be discharged.

## STANDARD OF REVIEW

■ In reviewing the bankruptcy court's application of equitable estoppel, we review the court's findings of fact for clear error while its conclusions of law are reviewed *de novo*. *In re Contractors Equipment Supply Co.*, 861 F.2d 241, 243 (9th Cir.1988). While the establishment of the elements of estoppel may require a factual determination, the nature of the elements themselves raise questions of law. *United States v. Ruby Co.*, 588 F.2d 697, 703 (9th Cir.1978).

## DISCUSSION

The Supreme Court has expressly left open the issue of whether estoppel may run against the government, refusing to hold, when such holding was unnecessary to decide the case before it, that "there are *no cases* in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." *Heckler v. Community Health Services*, 467 U.S. 51, 60–61, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984) (emphasis in original). It is well settled, however, that the government may not be estopped on the same terms as any other litigant. *Id.* at 60, 104 S.Ct. at 2224.

■ Although the Supreme Court has left the issue open, the Ninth Circuit has held that " 'where justice and fair play require it,' estoppel will be applied against the government ..." *Watkins v. United States Army*, 875 F.2d 699, 706 (9th Cir. 1989) (en banc) (quoting *Johnson v. Williford*, 682 F.2d 868, 871 (9th Cir.1982) and

*United States v. Lazy FC Ranch*, 481 F.2d 985, 988 (9th Cir.1973)). However, the Ninth Circuit has also held that in addition to the traditional four elements which must be satisfied in order to estop a private litigant, a party seeking to estop the government must establish affirmative misconduct on the part of the government. *See Watkins*, 875 F.2d at 707; *Rider v. United States Postal Service*, 862 F.2d 239, 240 (9th Cir.1988); *Wagner v. Director, Federal Emergency Management Agency*, 847 F.2d 515, 519 (9th Cir.1988); *Mukherjee v. Immigration and Naturalization Service*, 793 F.2d 1006, 1008 (9th Cir.1986); *Morgan v. Heckler*, 779 F.2d 544, 545 (9th Cir.1985); *United States v. Harvey*, 661 F.2d 767, 773 (9th Cir.1981); *Simon v. Califano*, 593 F.2d 121, 123 (9th Cir.1979). Mere neglect of duty is not enough. *Simon*, 593 F.2d at 123. Furthermore, estoppel will apply only where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability. *Watkins*, 875 F.2d at 707; *Rider*, 862 F.2d at 240; *Wagner*, 847 F.2d at 519; *Mukherjee*, 793 F.2d at 1008–09; *Simon*, 593 F.2d at 123; *Lazy FC Ranch*, 481 F.2d at 988.

█ The court below found that the traditional elements of estoppel were present in this case. Those elements are:

(1) The party to be estopped must know the facts;

(2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

(3) the latter must be ignorant of the true facts; and

(4) he must rely on the former's conduct to his injury.

*Watkins*, 875 F.2d at 709 (citing *United States v. Georgia–Pacific Co.*, 421 F.2d 92, 96 (9th Cir.1970)).

The IRS conceded elements one, three, and four at the trial, but denied the presence of the second element. With regard to the intent element, the bankruptcy court found that there was no reason to question that the given assessment date was accurate and that such date was being furnished to a taxpayer who would rely upon the assessment date in some manner. In addition, the court found that the debtors had a right to believe the employee had intended that the assessment date would be relied upon. It was reasonable for the employee to assume that the debtors would react to and rely upon the assessment date. The court found that the debtors had a right to believe that the IRS intended its conduct to be acted upon. Therefore, the court found that the second traditional element of estoppel was met by the facts of the case.

This finding was not clearly erroneous. It was reasonable for the IRS employee to assume that the assessment date would be relied upon by the debtors in some way. Taxpayers do not make calls to the IRS for no apparent reason. The IRS employee should have realized that her conduct would be acted upon. Since the IRS conceded elements one, three, and four, the traditional elements of estoppel have been met in this case.

█ However, in addition to establishing the traditional elements of equitable estoppel, a party seeking to estop the government must establish affirmative misconduct on the part of the government. The debtors' post-trial memorandum did not address the affirmative misconduct requirement. However, in its post-trial memorandum, the IRS pointed out this requirement and argued that the IRS employee's conduct in this case had not risen to the level of affirmative misconduct necessary to estop the government.

The court's memorandum of decision did not address the affirmative misconduct requirement. Rather the court concluded that the traditional elements of equitable estoppel had been met, that justice and fair play required the application of equitable estoppel, and that the application of equitable estoppel would not unduly damage the public interest. Since a showing of affirmative misconduct is a prerequisite for the application of equitable estoppel to the government, in order to affirm the court below, we must conclude that the IRS em-

ployee's conduct rose to the necessary level of affirmative misconduct.

There is no single test for detecting the presence of affirmative misconduct; each case must be decided on its own particular facts and circumstances. *Watkins,* 875 F.2d 707 (citing *Lavin v. Marsh,* 644 F.2d 1378, 1382–83 n. 6 (9th Cir.1981)). Affirmative misconduct does require an affirmative misrepresentation or affirmative concealment of a material fact by the government, although it does not require that the government intend to mislead a party. *Watkins,* 875 F.2d at 707 (citing *United States v. Ruby Co.,* 588 F.2d 697, 703–04 (9th Cir.1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979) and *Jablon v. United States,* 657 F.2d 1064, 1067 n. 5 (9th Cir.1981)).

As noted by the IRS, a mere failure to inform or assist does not justify the application of equitable estoppel against the government. *See Wagner,* 847 F.2d at 519; *Lavin,* 644 F.2d at 1384. In addition, mere unexplained delay does not show affirmative misconduct. *Immigration and Naturalization Service v. Miranda,* 459 U.S. 14, 18–19, 103 S.Ct. 281, 283–84, 74 L.Ed.2d 12 (1982) (per curiam); *Jaa v. United States Immigration and Naturalization Service,* 779 F.2d 569, 572 (9th Cir.1986). The debtors argue that the evidence supports a finding that the employee's conduct went beyond affirmative misconduct and was not just a mere failure to inform or assist. Although we sympathize with the debtors and their unfortunate situation in this case, we unfortunately cannot conclude that the employee's conduct rose to the necessary level of affirmative misconduct.

The law is well settled that mere negligence does not rise to the level of affirmative misconduct necessary to estop the government. A party seeking to estop the government must establish affirmative misconduct beyond mere negligence. *See Seva Resorts, Inc. v. Hodel,* 876 F.2d 1394, 1400 (9th Cir.1989); *Watkins,* 875 F.2d at 707; *Rider,* 862 F.2d at 240; *Wagner,* 847 F.2d at 519; *Mukherjee,* 793 F.2d at 1008; *Jaa,* 779 F.2d at 572;

*Morgan,* 779 F.2d at 545; *Harvey,* 661 F.2d at 775. The employee's conduct was clearly negligent in this case. However, we conclude that by supplying an incorrect assessment date in a conversation which lasted less than one minute, the employee's conduct, although negligent, did not rise to the level of affirmative misconduct necessary to estop the government. The court, in its memorandum of decision, specifically noted that "the individual in the IRS office supplying the information may have made a mere mistake. . . ." We agree and conclude that the employee's mere mistake is not enough to bind the IRS. Since we conclude that no affirmative misconduct was present, we need not address the remaining elements the debtors would have needed to establish in order to estop the government.

## CONCLUSION

Although the traditional elements of estoppel were met in this case, no affirmative misconduct beyond mere negligence was shown. The court below erred in estopping the IRS from asserting that the debtors' 1984 income taxes were assessed on October 15, 1987. Since the taxes were assessed within 240 days of the filing date, the taxes are non-dischargeable under § 523(a)(1)(A). The court's judgment that the taxes were discharged is reversed.