**In re Scott Evan STUBER, d/b/a S & S Construction, Debtor.**

**Bankruptcy No. 86–20934–11.**

United States Bankruptcy Court, D. Kansas.

June 30, 1992.

---

Christopher W. O'Brien, for debtor.

Janice M. Karlin, Nora M. Foster, Asst. U.S. Attys., for I.R.S.

Scott Evan Stuber, Shawnee, Kan., U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter comes on before the Court pursuant to the September 11, 1991 hearing on the motion of debtor-in-possession Scott Evan Stuber, d/b/a S & S Construction (hereinafter "debtor") to determine violation of the automatic stay and validity of claim of creditor Internal Revenue Service. The debtor appeared by and through his attorney, Christopher W. O'Brien. The United States of America, on behalf of its Agency the Internal Revenue Service (hereinafter "IRS") appeared by and through its

attorneys, Janice M. Karlin and Nora M. Foster, Assistant United States Attorneys for the District of Kansas. The Court set briefing schedules for the parties and upon the filing of said briefs, the Court took the matter under advisement.

## FINDINGS OF FACT

Based upon the pleadings, the record, testimony of witnesses and the stipulations of the parties, this Court finds as follows:

1. That on June 19, 1986, debtor filed a petition under Chapter 13 of Title 11, United States Code.

2. That after receiving notice of the bankruptcy, the IRS filed a proof of claim on September 8, 1986, in the total amount of $82,205.63.

3. That the debtor's bankruptcy was thereafter converted to a Chapter 11 bankruptcy proceeding on December 16, 1986.

4. That the debtor filed his Disclosure Statement and Plan of Reorganization on February 19, 1987. The IRS received a copy of the Disclosure Statement and Plan. The Plan was amended on April 9, 1987. After negotiations between debtor and the IRS, the Plan was again amended on May 19, 1987.

5. That on June 5, 1987, the Plan was further modified pursuant to the filing of a pleading entitled *Clarification to Amendments to Debtor's Plan of Reorganization* which stated that both classes of IRS claims would be paid interest per 11 U.S.C. § 1129(a) and § 1129(b)(2)(A)(i)(II). It allowed the IRS to offset refunds owed the debtor from the 1984 tax year, and set forth the exact amount of funds the IRS would receive as its proportionate share of the payment from the Chapter 13 trustee.

6. That the Plan of Reorganization, as amended and clarified, divided the IRS claim into a Class B–1 claim in the amount of $12,000, and a Class A claim in the amount of $70,205.63. Both classes of claims were scheduled to be paid in full over a period of 72 months from the date of assessment.

7. That a Confirmation Hearing was held on June 25, 1987. The IRS received notice of the Confirmation Hearing and counsel for the IRS attended the hearing. No objection was voiced against the Plan by the IRS. A written order confirming the Plan, as amended and clarified, was entered on July 2, 1987.

8. That the debtor received a letter from the U.S. Attorney's Office dated February 12, 1991, alleging that the debtor had a preconfirmation tax liability of $153,-697.87. The letter also indicated that debtor would still owe, after completion of the plan, $29,115.16 for Form 941 liability for the period ending December 31, 1984. The letter states that although IRS did not file a proof of claim for this 941 period, debtor would not receive a discharge for this amount because 11 U.S.C. § 523(a)(1)(A) makes 941 type liability nondischargeable.

9. That on or about March 11, 1991, debtor was served with a Notice of Intent to Levy, demanding payment in full of $1,021.88 due for Form 1040 taxes for the period ending 12/31/83. The Notice provides that a "Notice of Federal Tax Lien ... may be filed at any time to protect the interest of the government." The Notice also states that if the debtor does not make full payment within 30 days, the IRS may, without further notice, levy upon and seize the debtor's property and rights to property.

10. That on March 21, 1991, the IRS filed a Notice of Federal Tax Lien Under Internal Revenue Laws against debtor for 941 and 940 taxes incurred in periods ending 9/30/84, 3/31/85, 6/30/85, and 12/31/84 in the total assessed amount of $31,013.92. The Notice states that "THIS NOTICE CORRECTS ORIGINAL NOTICE 26416 FILED ON 2/11/86."

11. That on April 26, 1991, the debtor-in-possession filed a Motion to Determine Violation of Automatic Stay and Validity of Claim of Creditor, Internal Revenue Service. A copy of the motion was mailed to the Assistant United States Attorney in Kansas City, Kansas, but not to the IRS nor the Attorney General in Washington, D.C.

12. That on June 14, 1991, debtor and the IRS filed a Joint Application to Set Briefing Schedule. The application asked this Court to set a briefing schedule on the issues presented in debtor's motion.

## CONCLUSIONS OF LAW

Initially, the IRS argues that the debtor's motion should be denied because it was not properly served in accordance with Rules 9014 and 7004 of the Federal Rules of Bankruptcy Procedure and D.Kan.Bk. Rule 2002.1(C) and 7004.1. The Court acknowledges that the debtor did not serve a copy of the motion on the Attorney General's office in Washington D.C., or on the agency (IRS), as required by the above-referenced rules. However, in light of the Court's decision in this matter and the fact that the IRS filed a joint application asking this Court to set a briefing schedule, the Court finds that its ruling on the motion will not prejudice the IRS.

■ The debtor argues that the IRS should be held in contempt for violating the automatic stay provisions in 11 U.S.C. § 362. The debtor further argues that the Notice of Tax Lien which was filed on March 21, 1991, and the Notice of Intent to Levy which was served on the debtor on or about March 11, 1991, violated the stay.

The Court finds that the Notice of Tax Lien which was filed on March 21, 1991, extended a preexisting lien which would have automatically been a release *but for* the extension. There was testimony at the September 11, 1991 hearing that the lien was an "automatic or a self-releasing lien," and it would have expired if the Notice of Tax Lien had not been filed. The Court in *In re Morton*, 866 F.2d 561, 564 (2nd Cir. 1989), noted that the automatic stay operates only as a stay of "any act to *create, perfect,* or *enforce*" a lien against the property of the estate. (Citing 11 U.S.C. § 362(a)(4)). "[T]he section does not explicitly prohibit acts to *extend, continue,* or *renew* otherwise valid statutory liens, nor

is there any indication from the legislative history that congress intended such a result." *Id.*

In *In re Morton,* state law provided that a judgment lien on real property expires after ten years unless it is extended by the lienholder upon motion to a state court, with proper notice to the judgment debtor. *Id.* at 562. The Court noted that action pursuant to the law "does not result in an enlargement of the lien, nor does it threaten property of the estate which would otherwise be available to general creditors." *Id.* at 564. The extension of the lien "simply allows the holder of a valid lien to maintain the status quo—a policy not adverse to bankruptcy law, but rather in complete harmony with it." *Id.* The Court agrees with the reasoning in *In re Morton,* and finds that IRS's filing of the Notice of Tax Lien, which extended a previously filed lien, did not violate the automatic stay.

■ With regard to the Notice of Intent to Levy, Jeri Namisnak, a bankruptcy specialist with the IRS in Wichita, testified that during a routine quarterly monitoring of confirmed plans, she realized that part of the income tax credits to be credited toward the Plan had been erroneously offset by the computer to another income tax period. In retrieving this credit and putting it toward the Plan as provided she created a balance, and the normal collection process started and resulted in the Notice of Intent to Levy. When IRS became aware of the error, a freeze code was put in place immediately and the IRS did not levy on the debtor's property as a result of the Notice.

Service of the Notice of Intent to Levy may have been a technical violation of the automatic stay.[1] However, the debtor testified that he incurred no damages as a result of the Notice. Even if sanctions were appropriate in the present case, the Court finds that based on the reasoning in *United States v. Nordic Village, Inc.,* —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181

---

**1.** Originally the IRS admitted that service of the Notice of Intent to Levy was a technical violation of the stay. Subsequently, the IRS argued that the stay was not in effect at the time the Notice was served. The Court need not address this issue in light of the Court's holding that the IRS is not liable for violating the automatic stay.

(1992), the government has not waived its immunity from claims for monetary relief. In that case, the Supreme Court held that neither § 106(c) nor any other provision of law establishes an unequivocal textual waiver of the government's immunity from claims for monetary relief. *Id.* — U.S. at ——, 112 S.Ct. at 1017. The Court held that Congress has not empowered a bankruptcy court to order a recovery of money from the United States. *Id. See also In re Pearson,* 917 F.2d 1215 (9th Cir.1990), *cert. denied Pearson v. United States,* — U.S. ——, 112 S.Ct. 1291, 117 L.Ed.2d 514 (1992). Based on the foregoing, the Court finds that the IRS is not liable to the debtor pursuant to his request that IRS be held in contempt for violations of the automatic stay.

 The debtor's motion also asks this Court to determine that the pre-petition 941 taxes in the amount of $29,115.16 not be allowed as a claim against the debtor.[2] Debtor does not allege that he is not liable for the 941 taxes, nor does he allege that these taxes are dischargeable. Rather, the debtor argues that because these taxes were not included in the IRS's proof of claim and because of the various correspondence between debtor and the IRS regarding the debtor's tax liability, the IRS should be estopped from attempting to collect the 941 taxes.

In *In re Howell,* 120 B.R. 137 (9th Cir. 1990) (citations omitted), the Court recognized the following as the traditional elements of equitable estoppel:

1) The party to be estopped must know the facts;

2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has the right to believe it is so intended;

3) the latter must be ignorant of the true facts; and

4) he must rely on the former's conduct to his injury.

*Id.* at 141. The Court also stated that "in addition to the traditional four elements which must be satisfied in order to estop a private litigant, a party seeking to estop the government must establish affirmative misconduct on the part of the government." *Id.* "Furthermore, estoppel will apply only where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." *Id.*

The Court is not convinced that the debtor was ignorant of the 941 liability as required by the third element. At the September 11, 1991 hearing, the debtor acknowledged that he was the person responsible for filing S & S Construction's 941 taxes for the third quarter of 1984 and testified in pertinent part as follows:

Q. Mr. Stuber, isn't it true that you received a notice in September of 1986, in the fall of 1986, regarding the additional 941 liability which is at issue in this case?

A. Well, it's possible. All I can say is, we're talking about 1986. That's five years ago.

Q. Do you remember, Mr. Stuber, in the summer or fall of 1988, receiving a notice of a proposed assessment regarding an additional liability?

A. No, I don't.

Q. Do you remember, Mr. Stuber, in June of 1987, receiving a notice of an assessment regarding this additional liability?

A. The initial liability?

Q. The additional liability which is at issue in this case.

A. During that time I was getting so many notices that, you know, I can't remember every one. I'm sure I did. Which everything went to the attorney, which everything went to the bankruptcy court.

September 11, 1991 Tr. at p. 21.

With regard to the 941 taxes in issue, Don Hampton, a special procedures advisor

---

**2.** The debtor suggests in a subsequent brief that he is requesting a conclusive determination of the total amount of liability owing to the IRS. That issue is not properly before the Court. Debtor's motion only prays for the Court to find the IRS in contempt for allegedly violating the automatic stay and for the Court to determine whether the IRS should be estopped from collecting the 941 taxes in the amount of $29,-115.16. The Court will only address these issues as raised in the debtor's motion.

in the Wichita District Office of the IRS, also testified in pertinent part as follows:

Q. Do you know if this assessment and notification of this assessment was sent to Mr. Stuber?

A. Yes, I do.

Q. Do you know about when that would have been sent?

A. On the date of assessment which, I believe, was June 15th, 1987.

. . . .

Q. Mr. Hampton, directing your attention to Exhibit B, does that document reflect if and when notice was sent to Mr. Stuber regarding the assessment of the additional 941 liability?

A. Yes. Under the date column it shows the date, 9–10–86. The action taken is that the letter was sent to the taxpayer. It is not identified on this. The letter is a standard computer paragraph. This is the way we refer to it in the Service, but it is a notice of proposed additional tax.

September 11, 1991 Tr. at p. 36, 50.

■ Even if the debtor was not aware of the 941 tax liability, the Court finds that there is no evidence of affirmative misconduct on the part of the IRS. The debtor argues that the affirmative misconduct by IRS is its failure to advise the debtor that the amount of the tax obligation he was attempting to pay pursuant to the Plan of Reorganization did not include the entire pre-petition tax liability allegedly due. In *In re Howell*, the Court, in addressing the element of affirmative misconduct, recognized that "... a mere failure to inform or assist does not justify the application of equitable estoppel against the government ... [i]n addition, mere unexplained delay does not show affirmative misconduct." *In re Howell*, 120 B.R. at 142 (citations omitted). "A party seeking to estop the government must establish affirmative misconduct beyond mere negligence." *Id.* (citations omitted).

The Court finds that the debtor has not shown affirmative misconduct on the part of the IRS. The deficiency arose as a result of liabilities incurred in 1984, when the debtor failed to file his 941 quarterly

return for the quarter ending in September 1984. Therefore, the IRS was forced to prepare estimates on the debtor's behalf and later match those returns with employee wage statements provided to the IRS. Mr. Hampton testified that in this case they did not match. He further testified that as a result of the mismatch, a letter is sent to the taxpayer proposing an additional assessment or asking him to correct the records if, in fact, the mismatch is proper. Mr. Hampton also testified that in this case the IRS did not receive a response and therefore the additional proposed assessment was assessed.

In *In re Gurwitch*, 794 F.2d 584 (11th Cir.1986), the debtor also argued that the IRS should be equitably estopped from pursuing collection efforts on taxes not included in the proof of claim. The Court noted that 11 U.S.C. § 1141(d)(2) makes it clear that the confirmation of a plan of reorganization does not fix tax liabilities made nondischargeable under § 523(a)(1)(A). *Id.* at 585. *See also In re Olsen*, 123 B.R. 312, 314 (Bankr.N.D.Ill.1991) (stating that the IRS's nondischargeable claim against the debtor would survive bankruptcy even if the IRS had never filed a proof of claim in his bankruptcy case). In refusing to estop the IRS, the Court in *In re Gurwitch* noted that "[i]nasmuch as [these taxes] are nondischargeable, ... a reasonable debtor should expect that the IRS will seek to enforce such claims." *Id.* at 586. "While the IRS well could have been more diligent in pursuing its collection efforts, we cannot find legally justifiable [the debtor's] reliance on the IRS proof of claim as signifying the total amount owed the government." *Id.*

■ The debtor also argues that IRS's demand that the debtor now pay additional pre-petition 941 taxes is tantamount to the IRS either filing a new claim or seeking to amend its existing claim. The debtor then cites case law regarding the issue of amendments to claims, and concludes that the IRS should not be allowed to amend its claim. In support of this proposition, the debtor cites *In re Kolstad*, 928 F.2d 171 (5th Cir.1991), *cert. denied Kolstad v. IRS,*

— U.S. ——, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991). In that case, the IRS did not file a proof of claim and the debtor filed a claim on behalf of the IRS. The IRS then sought to amend the claim filed by the debtor. The Court noted that:

Kolstad's brief acknowledges the problem that he confronted and its statutory solution. If IRS, as a creditor with a non-dischargeable claim, elected not to participate in the bankruptcy case and not to file a claim, the debtor would remain burdened by that debt following bankruptcy ... [n]ot only would this fact threaten the debtor after bankruptcy, but it might also prevent him from confirming a plan of reorganization covering creditors who are before the court ... Section 501(c) empowered the debtor to force IRS to participate in the bankruptcy and subject its debt to dischargeability. 11 U.S.C. § 1129(a)(9)(C) (tax debts covered by the plan are fully discharged). Kolstad took advantage of this provision.

*Id.* at 174. In the present case, the IRS did not file a proof of claim for the 941 taxes in issue. Therefore, as noted above in *In re Kolstad*, if the 941 taxes are non-dischargeable [3] the debtor will remain burdened by that debt following bankruptcy. The Court in *In re Kolstad* notes that the statutory solution to this problem is § 501(c). *Id.* The debtor has not taken advantage of that provision in the instant case.

■ The penalty for failure to file a claim is the loss of the right to vote on and receive distribution under the plan. *See In re Video Gaming, Inc.*, 123 B.R. 889, 891 (Bankr.D.Nev.1991). Rule 3003(c)(2) of the Federal Rules of Bankruptcy Procedure provides that a creditor who fails to file a proof of claim "shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." The Court finds that the IRS's failure to file a proof of claim with respect to the 941 taxes in issue would result in a loss of the right to payment on those taxes under the plan. *See Id.* at 891.

The IRS asserts that it has no intent of trying to collect these additional pre-petition tax liabilities within the bankruptcy proceeding, which has been demonstrated by the IRS's total failure to make a single attempt to collect these additional assessments. The IRS alleges that it intends to collect these nondischargeable assessments outside of the bankruptcy context at the point when it is apparent collection attempts will be successful. "[A] creditor with a nondischargeable debt can collect outside the plan as well as under the plan ... [and] is not constrained by a confirmed plan and is free to use available law to collect the debt once the automatic stay is lifted." *Id.*

IT IS THEREFORE, BY THE COURT, ORDERED That debtor's request that IRS be found in contempt for violation of the automatic stay provisions shall be and the same is hereby DENIED.

IT IS FURTHER, BY THE COURT, ORDERED That the IRS is entitled to collect, outside the debtor's plan of reorganization, any non-dischargeable taxes for Form 941 liability for the period ending December 31, 1984.

IT IS FURTHER, BY THE COURT, ORDERED That the entry of final decree shall be and the same is hereby extended to 30 days after the date of this Memorandum Opinion and Order.

This Memorandum shall constitute my findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure.

## JUDGMENT ON DECISION DETERMINING VIOLATION OF AUTOMATIC STAY AND VALIDITY OF CLAIM OF IRS

This matter comes on before the Court pursuant to the motion of Scott Evan Stuber, d/b/a S & S Construction (hereinafter "debtor") to determine violation of the au-

---

3. The Court notes that the debtor has not alleged that the 941 taxes in issue are non-dischargeable and the Court is not ruling on this issue. The issue of whether these taxes are non-dischargeable must be brought pursuant to an adversary proceeding, and as such the issue is not properly before the Court.

tomatic stay and validity of claim of creditor Internal Revenue Service. The Honorable Benjamin E. Franklin presiding. A hearing was held on September 11, 1991, and the matter was thereafter submitted upon the briefs of the parties, and a decision having been rendered,

IT IS THEREFORE, BY THE COURT, ORDERED That debtor's request that IRS be found in contempt for violation of the automatic stay provisions shall be and the same is hereby DENIED.

IT IS FURTHER, BY THE COURT, ORDERED That the IRS is entitled to collect, outside the debtor's Plan of Reorganization, any non-dischargeable taxes for Form 941 liability for the period ending December 31, 1984.

IT IS FURTHER, BY THE COURT, ORDERED That the entry of final decree shall be and the same is hereby extended to 30 days after the date of this Memorandum Opinion and Order.