In re William O'CALLAGHAN, Debtor.

No. 8:99–BK–14794.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 20, 2006.

Buddy D. Ford, Tampa, FL, for Debtor.

**ORDER ON (1) MOTION TO REQUIRE RELEASE OF POST–PETITION LIENS OF INTERNAL REVENUE SERVICE; (2) DEBTOR'S MOTION FOR SUMMARY JUDGMENT; AND (3) UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider (1) the Motion to Require Release of Post–Petition Liens of the Internal Revenue Service filed by the Debtor, William O'Callaghan; (2) the Debtor's Motion for Summary Judgment;

and (3) the United States' Motion for Summary Judgment.

The preliminary issue in this case is whether the Internal Revenue Service (IRS) violated the automatic stay by refiling two Notices of Federal Tax Lien, to prevent the expiration of its prepetition liens, while the Debtor's Chapter 7 case was pending.

If the Court determines that the tax liens remain in effect, the second issue is whether the amount of the liens was established by the value of the Debtor's property as of the petition date, or whether the IRS is entitled to the benefit of any increase in the value of the Debtor's property that occurred postpetition.

**Background**

The Debtor worked as an investment manager on Wall Street in the early 1980's, and filed Form 1040 income tax returns for the 1981, 1982, 1983, and 1984 tax years. (Adv. Pro. 99–589, Doc. 121, Findings of Fact, Conclusions of Law, and Memorandum Opinion, p. 2).

The IRS subsequently audited the Debtor's returns for the tax years in question, and determined that additional taxes were owed. The taxes were assessed in 1986, 1987, and 1994. (Adv.Pro.99–589, Doc. 121, p. 2).

The Debtor relocated to Florida in June of 1994. On July 7, 1994, he purchased a home located at 738 Mandalay Avenue, Clearwater Beach, Florida. (Adv.Pro.99–589, Doc. 121, pp. 3–4).

On March 29, 1995, the IRS filed Notices of Federal Tax Liens in Pinellas County, Florida, where the Debtor's home is located. (Doc. 126, Debtor's Motion for Summary Judgment, p. 2; Doc. 128, IRS's Memorandum in Support of Motion for Summary Judgment, p. 1). The Notices related to the taxes that had been assessed

for the 1981, 1982, 1983, and 1984 tax years.

The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on September 10, 1999.

The Debtor contends that his home in Clearwater was valued at $191,000.00 on the date that he filed his Chapter 7 petition. The Debtor further contends that the home was encumbered by a mortgage in the amount of $120,000.00 as of the filing date, with the result that his equity in the home at that time equaled the amount of $71,000.00. (Doc. 126, Debtor's Motion for Summary Judgment, p. 3).

The IRS filed a proof of claim in the Chapter 7 case (Claim Number 1) in the amount of $2,064,448.00, based on the Debtor's income tax liabilities for 1981, 1982, 1983, and 1984.

On October 7, 1999, the Debtor filed a Complaint against the IRS seeking a determination that the tax liabilities were dischargeable in his bankruptcy case.

On March 18, 2004, and April 26, 2004, before the dischargeability action was resolved, the IRS re-filed its Notices of Federal Tax Lien in Pinellas County, Florida. (Doc. 120, Debtor's Motion to Require Release of Post–Petition Liens, Exhibit B).

The Debtor contends that the Notices of Federal Tax Liens originally filed on March 29, 1995, would have expired as a matter of law in March of 2005. (Doc. 126, p. 3). The IRS acknowledges that the tax liens "would have otherwise expired" if the Notices had not been re-filed. (Doc. 128, pp. 1–2).

On September 14, 2004, the Court entered its Findings of Fact, Conclusions of Law, and Memorandum Opinion, and also a Final Judgment, in the dischargeability action. (Adv. No. 99–589, Docs.121, 122). In the Memorandum Opinion and Final Judgment, the Court found that the "Debt-or's income tax liabilities for the 1981, 1982, 1983, and 1984 tax years, as set forth in Proof of Claim No. 1 filed by the United States of America, Internal Revenue Service, are dischargeable in the chapter 7 case of the Debtor, William O'Callaghan."

On May 2, 2005, the Debtor filed the Motion to Require Release of Post–Petition Liens that is currently at issue. (Doc. 120). The Debtor asserts that the IRS violated the automatic stay by re-filing the Notices of Federal Tax Liens while his Chapter 7 case was pending, with the result that the liens are void and should be released. Alternatively, in the event that the Court determines that the liens remain in effect, the Debtor asserts that they should be limited in amount to the extent of his equity in the Pinellas County home as of the date that he filed his bankruptcy petition.

On August 24, 2005, the Discharge of Debtor was entered in the Debtor's Chapter 7 case. (Doc. 131).

### Discussion

The Court finds that there are no genuine issues of material fact, and that the Debtor's Motion to Require Release of Post–Petition Liens should be denied as a matter of law.

**A. The re-filing of the Notices of Federal Tax Lien by the IRS did not violate the automatic stay.**

■ The IRS did not violate the automatic stay by re-filing the Notices of Federal Tax Lien while the Debtor's bankruptcy case was pending, even though the underlying tax liability was ultimately discharged.

■ First, "Bankruptcy law clearly holds that a Debtor's discharge for *in personam* liability for taxes does not effect [sic] the *in rem* obligations of a tax lien based on tax liability discharged." *In re*

*Dishong,* 188 B.R. 51, 54 (Bankr.M.D.Fla. 1995). Tax liens "are still valid even though the underlying tax debt is dischargeable." *In re Carpenter,* 2003 WL 1908944, at *1, n. 4 (Bankr.M.D.Fla.). Tax liens "remain valid and attached to prepetition property despite a discharge." *In re Anderson,* 250 B.R. 707, 710 (Bankr. D.Mont.2000). See also *In re Pecora,* 297 B.R. 1, 3 (Bankr.W.D.N.Y.2003).

In this case, therefore, the prepetition tax lien of the IRS survived the Debtor's Chapter 7 case, even though the Debtor received a discharge of his personal liability for the tax debts. See *Dewsnup v. Timm,* 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

Second, the renewal or continuance during a bankruptcy case of an existing, prepetition lien does not violate the automatic stay.

In *In re Stuber,* 142 B.R. 435 (Bankr. D.Kan.1992), for example, a chapter 11 debtor filed a Motion to Determine Violation of Automatic Stay after the IRS had extended a prepetition tax lien that would have expired had the new Notice not been filed. The Court found that the "IRS's filing of the Notice of Tax Lien, which extended a previously filed lien, did not violate the automatic stay." *In re Stuber,* 142 B.R. at 438.

In reaching this decision, the Court in *Stuber* relied primarily on the reasoning set forth in *In re Morton,* 866 F.2d 561 (2d Cir.1989).

In *Morton,* the Court determined that a creditor's extension of a judgment lien did not violate the automatic stay, because § 362 operates as a stay only of acts to "create, perfect, or enforce" a lien against property of the estate, but does not prohibit the extension, continuation, or renewal of an otherwise valid statutory lien. *In re Morton,* 866 F.2d at 564. According to the Court, permitting the creditor to extend its judgment lien during the bankruptcy case does not "threaten property of the estate which would otherwise be available to general creditors." Instead, it "simply allows the holder of a valid lien to maintain the status quo—a policy not adverse to bankruptcy law, but rather in complete harmony with it." *Id.* at 564.

Similar reasoning previously had been applied by the Court in *In re Sayres,* 43 B.R. 437 (W.D.N.Y.1984). In *Sayres,* as in the case at bar, the issue was "whether the refiling of a Federal Income Tax Lien for a debtor who has filed for bankruptcy after the initial tax lien is filed, violates the automatic stay provisions of 11 U.S.C. section 362(a)." *In re Sayres,* 43 B.R. at 438. The Court held that no violation occurred.

> After reviewing section 362(a) subsections 4, 5 and 6, this Court must conclude that the refiling of the tax lien did not "create, perfect or inforce" [sic] a lien or act to "collect, assess or recover" the appellant's claim against the debtor. Rather, this purely ministerial act merely continued a previously created and perfected lien and preserved the status quo. The refiling of the tax lien did not change the debtor's position vis-à-vis her previously incurred tax liability, or grant the Government any preference it did not have prior to the commencement of the bankruptcy proceeding. All the refiling did was to prevent the lien from lapsing.

*Id.* at 439. In other words, the refiling did not violate the stay because it "did nothing more than preserve the status quo, (the purpose for which Congress enacted section 362(a))." *Id.*

Additionally, no violations were found under analogous circumstances in *In re Larson,* 979 F.2d 625, 627 (8th Cir. 1992)(Since state law required the creditor to file an "addendum" to preserve its exist-

ing mortgage, the filing did not violate the automatic stay.); *In re Jarrett*, 293 B.R. 127, 132 (Bankr.N.D.Ohio 2002)(The act of renewing a prepetition lien does not conflict with the discharge injunction provided by § 524, since the creditor is only attempting to preserve its *in rem* interest.); *In re Dinatale*, 235 B.R. 569, 573 (Bankr. D.Md.1999)(An "attempt to revive or renew the existing tax lien on Debtor's property post-discharge does not violate the discharge injunction."); and *In re McCorkle*, 209 B.R. 773, 777 (Bankr.M.D.Ga. 1997)(The renewal or continuation of a lien is an *in rem* action which would not violate the section 524 discharge injunction.)

Based on the authorities discussed above, the Court finds that the IRS did not violate the automatic stay by re-filing the Notices of Federal Tax Lien while the Debtor's bankruptcy case was pending, even though the Debtor ultimately received a discharge of his *in personam* liability for the underlying taxes.

The federal tax liens should not be avoided on the basis of the IRS's postpetition re-filing of the Notices.

The Court makes no determination, however, as to whether the re-filed Notices are otherwise effective to preserve the existing tax liens. It appears that the parties assumed that the prepetition liens had not lapsed before the Notices were re-filed, and the parties therefore did not address the timeliness of the renewals. The record does not establish the specific expiration date of the original liens. Consequently, the Court finds only that the liens are not void as a violation of the automatic stay, but does not determine the effect of the re-filed Notices under non-bankruptcy law.

**B. The amount of the tax lien was not fixed by the value of the Debtor's property as of the petition date.**

■ The Court has determined that the re-filing of the tax liens by the IRS did not violate the automatic stay. Consequently, the liens should not be voided on that basis. The second issue, therefore, is whether the amount of the liens should be fixed as of the date that the Debtor filed his bankruptcy petition.

The Court finds that the amount of a federal tax lien is not established by the value of the subject property on the petition date. Instead, the IRS should be permitted to receive the benefit of any increase in the value of the property that occurs postpetition.

■ Any increase in the value of property that secures a lien accrues to the benefit of the lien holder. *United States v. Comer*, 222 B.R. 555, 563 (E.D.Mich.1998). This principle was confirmed by the Supreme Court of the United States in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

In *Dewsnup*, a debtor asked the Court to reduce a lien to the fair market value of the property securing the claim pursuant to § 506 of the Bankruptcy Code. The Supreme Court held that § 506(d) "does not allow petitioner to 'strip down' respondents' lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to 502." *Dewsnup*, 502 U.S. at 417, 112 S.Ct. 773.

In reaching its decision, the Supreme Court first recognized the well-established rule that "liens pass through bankruptcy unaffected." *Id.* at 417, 112 S.Ct. 773. The Court then reasoned as follows:

> The practical effect of petitioner's argument is to freeze the creditor's secured interest at the judicially determined valuation. By this approach, the creditor would lose the benefit of any increase in the value of the property by the time of the foreclosure sale. The

increase would accrue to the benefit of the debtor, a result some of the parties describe as a "windfall."

We think, however, that the creditor's lien stays with the real property until the foreclosure. That is what was bargained for by the mortgagor and the mortgagee.... Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain.

*Id.* Consequently, the debtor was not permitted to reduce the creditor's lien to the value of the collateral as of a specific date.

Following *Dewsnup*, courts have consistently rejected the efforts of debtors to restrict the amount of secured claims to the value of the collateral securing the claims.

In *In re Thomas*, 260 B.R. 884 (Bankr. M.D.Fla.2001), for example, the debtors objected to the IRS's secured claim, and filed a motion to value the claim based on the amount of the equity in their home. The Court overruled the objection and denied the motion to value the claim.

If the collateral were to subsequently appreciate, then the debtor could keep such appreciation upon post-bankruptcy sale of the collateral, resulting in a windfall. (Citation omitted.) The Supreme Court in *Dewsnup* found such a result in conflict with the established principle that liens should pass through bankruptcy unaffected.

... It would be impermissible, pursuant to *Dewsnup*, for the Court today to place a cap on the value of the IRS' lien and therefore on its eventual collection from that perhaps far-off sale, leaving any appreciation between now and that date for Debtors to enjoy.

*In re Thomas*, 260 B.R. at 885(quoted in *In re Stone*, 329 B.R. 882, 884 (Bankr. M.D.Fla.2005)). "In other words, pursuant to *Dewsnup* and its progeny, chapter 7 debtors should not be permitted to obtain a 'determination of secured status' as of the petition date, since the effect of such a determination would be to 'improperly freeze the creditor's secured interest at the judicially determined value.' " *In re Stone*, 329 B.R. at 884(quoting *In re Phillips*, 2005 WL 995001, at \*1 (Bankr. M.D.Fla.)).

Based on the authorities discussed above, the Court finds that the alternative relief requested by the Debtor should be denied. The amount of the tax liens asserted by the IRS should not be limited in amount to the extent of the Debtor's equity in his home as of the date that he filed his bankruptcy petition.

## Conclusion

The Debtor initiated this contested matter by filing a Motion to Require Release of Post–Petition Liens of the IRS. The Court finds that there are no genuine issues of material fact, and that the Debtor's Motion should be denied as a matter of law.

First, the IRS did not violate the automatic stay by re-filing the Notices of Federal Tax Lien, even though the Debtor ultimately received a discharge of his *in personam* liability for the underlying taxes. Generally, such a re-filing simply preserves the status quo by preventing the expiration of the prepetition liens. Accordingly, the liens should not be avoided on the basis of the IRS's postpetition conduct.

Second, the amount of the IRS's liens should not be established by the value of the Debtor's property as of the petition

date, since the IRS's lien "stays with the real property until the foreclosure" or sale. *Dewsnup,* 502 U.S. at 417, 112 S.Ct. 773.

Accordingly:

**IT IS ORDERED** that:

1. The Motion to Require Release of Post–Petition Liens of Internal Revenue Service, filed by the Debtor, William O'Callaghan, is denied.

2. The Motion for Summary Judgment filed by the Debtor, William O'Callaghan, is denied.

3. The Motion for Summary Judgment filed by the United States of America, Internal Revenue Service, is granted as set forth in this Order.