**In re Vanette McCONAHEY, Debtor.**

**Vanette McCONAHEY, Plaintiff,**

v.

**UNITED STATES of America (INTERNAL REVENUE SERVICE) and State of Illinois (Illinois Department of Revenue), Defendants.**

**Bankruptcy No. BK 89–50058.
Adv. No. 95–5093.**

United States Bankruptcy Court,
S.D. Illinois.

Feb. 16, 1996.

Steven N. Mottaz, Alton, IL, for Plaintiff.

Gerald M. Burke, Asst. U.S. Attorney, Fairview Hts., IL, for I.R.S.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

In this action, debtor Vanette McConahey seeks a determination that prepetition tax liabilities owing to the United States of America and the State of Illinois were satisfied by her completion of payments under a confirmed Chapter 11 plan of reorganization. Both the United States and the State of Illinois filed proofs of claim in the debtor's Chapter 11 case, and the debtor's plan provided for full payment of these tax claims. However, following completion of the debtor's plan payments and the closing of her Chapter 11 case, the United States and the State of Illinois filed notices of tax liens to enforce additional prepetition tax claims against the debtor. The debtor asserts that the defendants, having filed proofs of claim in this case, are bound by the order of confirmation providing for payment of such claims and cannot now seek to recover additional prepetition taxes.

The tax liabilities at issue are the debtor's 1988 unemployment taxes imposed under the Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. § 3301 *et seq.,* and the Illinois Unemployment Insurance Act, 820 ILCS 405/100 *et seq.* The federal FUTA tax, also known as Form 940 tax or unemployment tax, is determined in conjunction with the state tax, with an employer obtaining credit against the FUTA tax based on payment of the state unemployment tax. *See* 26 U.S.C. §§ 3301, 3302.

The facts are not in dispute. On January 31, 1989, the debtor filed a Chapter 11 bankruptcy petition. In her schedules, she listed a priority tax claim of $319.96 for 4th Quarter 1988, "Form 940—FUTA" taxes owing to the Internal Revenue Service. In addition, she listed priority tax claims totaling $4,105.76 for 2nd, 3rd, and 4th Quarter 1988, Illinois "unemployment taxes" owing to the Illinois Department of Employment Security.

On April 6, 1989, the Internal Revenue Service filed a proof of claim for taxes totaling $18,343.56, which included $319.96 for 1988 Form 940 taxes. On June 1, 1989, the Illinois Department of Revenue filed a proof of claim for various taxes totaling $23,700.55, but did not include a claim for 1988 unemployment taxes owing to the Illinois Department of Employment Security. No claim was filed for state unemployment taxes until after confirmation of the debtor's plan when, on March 25, 1991, the Illinois Department of Employment Security filed a proof of claim in the amount of $4,105.76, for the 1988 unemployment taxes listed in the debtor's schedules.

On June 25, 1990, the Court confirmed the debtor's Chapter 11 plan without objection by the United States or the State of Illinois. The debtor's plan provided for payment of priority tax claims as follows:

1. Federal taxes: Upon confirmation of this plan, debtor shall pay the amount of the tax liability stated in the proof of claim filed on behalf of the Internal Revenue Service, $18,343.56 over 60 months with 10% interest. . . .

2. State taxes: Upon confirmation of this plan, debtor shall pay the duly-scheduled tax claim of the Illinois Department of

Revenue in the amount of $23,700.55 at the amount of $520.00 per month.

The debtor subsequently paid the United States and the State of Illinois the full amount of their claims as provided in the plan. On March 1, 1993, a final decree was entered closing the debtor's Chapter 11 case.

On December 16, 1993, following entry of the final decree, the Internal Revenue Service filed a notice of federal tax lien seeking to collect, *inter alia,* 1988 Form 940 taxes in the amount of $4,641.02. Likewise, on March 15, 1995, the Illinois Department of Employment Security filed a notice of tax lien seeking to collect 1988 Illinois unemployment taxes in the amount of $4,833.49.

The debtor filed the present action against the United States and the State of Illinois to enjoin their collection of prepetition taxes.[1] The debtor does not dispute, for purposes of this proceeding, the defendants' computation of the amount due for 1988 unemployment taxes. The debtor maintains, however, that the United States and the State of Illinois are bound by the order of confirmation which, based on the proofs of claim filed by these defendants, adjudicated the debtor's prepetition tax liability at the dollar amount provided in her plan. In response, the United States asserts that the FUTA tax at issue is a priority tax excepted from discharge under § 523 and that, as such, it may be collected notwithstanding the confirmation order and the debtor's completion of payments under the plan.

■ Section 1141 of the Bankruptcy Code provides generally that a confirmed Chapter 11 plan binds a creditor whether or not the creditor has accepted the plan, *see* 11 U.S.C. § 1141(a), and, further, that confirmation of a plan discharges the debtor from preconfirmation debts. *See* 11 U.S.C. § 1141(d)(1). These general provisions, however, are subject to the exception of § 1141(d)(2),[2] which provides:

> (2) The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title.

11 U.S.C. § 1141(d)(2). Section 523(a)(1), in turn, provides that a discharge under § 1141 does not discharge an individual debtor from a tax debt:

> (A) of the kind and for the periods specified in section ... 507(a)(8) of this title, *whether or not a claim for such tax was filed or allowed.*

11 U.S.C. § 523(a)(1)(A) (emphasis added). This section, when read in conjunction with § 507(a)(8) to which it refers, excepts from discharge "an employment tax on [wages] earned from the debtor [before bankruptcy] ... for which a return [was] last due [within three years of the date of filing of the petition.]" 11 U.S.C. § 507(a)(8)(D).

■ The debtor here does not deny that the taxes at issue, which came due in the year preceding the debtor's bankruptcy filing, constitute priority employment taxes under § 507(a)(8)(D). *See Matter of Pierce,* 935 F.2d 709, 711–13 (5th Cir.1991); *In re Continental Minerals Corp.,* 132 B.R. 757, 759 (Bankr.D.Nev.1991); *In re Skjonsby Truck Line, Inc.,* 39 B.R. 971, 973–74 (Bankr. D.N.D.1984).[3] As such, these taxes were

---

**1.** Although the state tax lien was filed by the Illinois Department of Employment Security, the debtor inexplicably named as defendant "the State of Illinois (Department of Revenue)" and served the Director of that agency. The Department of Revenue did not answer the complaint. However, the debtor has not sought a default against the State of Illinois because of the interrelation of the federal and state unemployment taxes at issue.

**2.** Section 1141(a) states in pertinent part:

> (a) *Except as provided in subsection[ ] (d)(2) ... of this section,* the provisions of a confirmed plan bind ... any creditor....

11 U.S.C. § 1141(a) (emphasis added). Similarly, § 1141(d)(1) states:

(d)(1) *Except as otherwise provided in this subsection,* ... the confirmation of a plan— (A) discharges the debtor from any debt that arose before ... confirmation....
11 U.S.C. § 1141(d)(1) (emphasis added).

**3.** Courts have also characterized unemployment taxes under FUTA and state unemployment compensation systems as "excise" taxes, entitled to priority under § 507(a)(8)(E). *See In re Sacred Heart Hospital of Norristown,* 190 B.R. 38, 43 (Bankr.E.D.Pa.1995). In this case, it is immaterial whether the unpaid taxes are employment taxes under § 507(a)(8)(D) or excise taxes under § 507(a)(8)(E), as both are nondischargeable under § 523(a)(1)(A) if a return was due within three years of filing. *See* 11 U.S.C. § 507(a)(8)(E).

excepted from discharge under § 523(a)(1)(A), and they retained this status regardless of the government's filing of a proof of claim. Because the United States and the State of Illinois held nondischargeable claims that could be enforced outside of bankruptcy, confirmation of the debtor's plan in this case did not fix the amount of the debtor's tax liability to these creditors. *See In re DePaolo*, 45 F.3d 373, 375–76 (10th Cir.1995); *In re Gurwitch*, 794 F.2d 584, 585 (11th Cir.1986).

▇▇▇▇ While principles of *res judicata* apply generally to bankruptcy proceedings, the plain language of §§ 1141(d)(2) and 523(a)(1)(A) forbids the application of those principles here. *See DePaolo*, 45 F.3d at 376. By expressly providing that the described taxes are not discharged *"whether or not* a claim for such taxes was filed or allowed," 11 U.S.C. § 523(a)(1)(A) (emphasis added), Congress has determined that the government may make a claim for taxes for a particular year in a bankruptcy proceeding, accept the judgment of the bankruptcy court, and then make additional claims for that same year even though such conduct may seem inequitable or may impair the debtor's fresh start. *DePaolo*, at 376. As noted by courts interpreting §§ 1141(d)(2) and 523(a)(1), allowing the government to pursue its claim after confirmation and consummation of a Chapter 11 plan admittedly conflicts with the "fresh start" policy animating the discharge provisions. However, it is apparent that Congress has made a choice between the collection of revenue and rehabilitation of the debtor by making it extremely difficult for a debtor to avoid payment of taxes under the Bankruptcy Code. This is an express congressional policy judgment that courts are bound to follow. *Id.; see Matter of Fein*, 22 F.3d 631, 633 (5th Cir.1994); *In re Grynberg*, 986 F.2d 367, 371 (10th Cir.1993); *In re Gurwitch*, 794 F.2d at 585–86.

The debtor, citing *In re Martin*, 150 B.R. 43 (Bankr.S.D.Cal.1993), argues that the defendants here should nonetheless be barred on estoppel principles from seeking the full amount of the subject taxes since they, not the debtor, were responsible for the incorrect amount of their claims provided for in the debtor's plan. The Court notes, initially, that *Martin* is distinguishable on its facts from the present case. The government there had entered into a detailed agreement for the determination of additional prepetition taxes but, following confirmation, failed to follow that agreement. The *Martin* court ruled that the government was bound by the procedures incorporated into the debtors' plan—even though the plan could not fix the amount of the government's nondischargeable claim—and, accordingly, exercised its equitable powers to hold the government to the previously acceptable agreement. *See Martin*, 150 B.R. at 47.[4]

▇▇▇▇ In this case, by contrast, the governmental defendants took no action in the Chapter 11 plan process beyond filing a proof of claim. The express language of § 523(a)(1)(A) makes filing a proof of claim immaterial in determining the nondischargeability of a debt. It would, therefore, be inconsistent with the policy embodied in § 523(a)(1)(A) if such an action were found to justify estoppel. It is generally accepted, moreover, that estoppel may not be invoked against the government in the absence of a showing of affirmative misconduct. Thus, a party seeking to estop the government must establish an affirmative act of misrepresentation or concealment of a material fact; mere negligence, delay, or inaction will not suffice. *DePaolo*, 45 F.3d at 377. In this case, the debtor has not alleged that the United States or the State of Illinois filed their proofs of claim in order to misrepresent or conceal the true amount of unemployment taxes owed by the debtor. Rather, the facts indicate not only that there was no misrepresentation in the government's statement of the amount of unemployment taxes owed by the debtor but also that the debtor was well aware of the amount due at the time she filed her bankruptcy petition. Under this scenario, no es-

---

**4.** The *Martin* court did not employ the doctrine of equitable estoppel in its analysis but, rather, reasoned that the government, in entering into an agreement for the determination and collection of claims, had subjected itself to the court's equitable jurisdiction to resolve debtor/creditor matters.

toppel would lie even under the traditional requirements for estoppel, which must be fulfilled in addition to the affirmative misconduct requirement. *See id.*

■ There are four requirements to establish a claim of estoppel against a private litigant: the party to be estopped must know the facts and must intend, or lead the other party to believe he intended, that his conduct will be acted upon. The party seeking estoppel, on the other hand, must be ignorant of the true facts and must rely on the former's conduct to his injury. *Id.; In re Howell,* 120 B.R. 137, 141 (9th Cir. BAP 1990); *In re Stuber,* 142 B.R. 435, 439 (Bankr.D.Kan. 1992). In this case, the debtor's schedules accompanying her Chapter 11 petition stated that she owed $4,105.76 to the Illinois Department of Employment Security for 1988 unemployment taxes and $319.96 to the Internal Revenue Service for 1988 FUTA taxes. As noted earlier, these two taxes are determined in conjunction with each other, with the employer obtaining a credit against the federal FUTA tax based on payment of the state tax. The United States' proof of claim for FUTA taxes in the amount of $319.96, therefore, necessarily presumed the debtor's payment of her state unemployment tax obligation of $4,105.76. When the debtor failed to provide for and pay the state tax through her Chapter 11 plan, her tax liability for the federal FUTA tax increased correspondingly.[5] It appears, therefore, that the debtor knew the amount of her FUTA tax liability at the time she filed her petition and that the increased amount now sought by the United States resulted from her failure to pay the offsetting state tax. For this reason, the debtor cannot contend that the United States misrepresented the amount of her federal tax liability in its proof of claim or that she relied on this amount to her detriment. Accordingly, the Court finds without merit the debtor's argument that the United States should be estopped from seeking collection of the 1988 FUTA taxes owed by the debtor.

■ Similarly, the Court finds no basis for the debtor's assertion that the State of Illinois should be estopped from seeking payment of 1988 state unemployment taxes because it failed to include this amount in its proof of claim. As indicated, the debtor set forth in her schedules the amount of her 1988 tax liability to the Illinois Department of Employment Security. It was not necessary for the Department of Employment Security to file a proof of claim for this amount, as the debt was listed as undisputed and was thus "deemed filed" pursuant to 11 U.S.C. § 1111(a).[6] *See In re Candy Braz, Inc.,* 98 B.R. 375, 378–79 (Bankr.N.D.Ill.1988); *In re Haugen Constr. Servs., Inc.,* 88 B.R. 214, 216 (Bankr.D.N.D.1988), *aff'd* 876 F.2d 681 (8th Cir.1989). Because the claim was presumed valid in the amount stated by the debtor, *see* Bankr.R. 3003(b)(1), the debtor should have provided for payment of this claim in her Chapter 11 plan. However, the debtor made no provision for the claim of the Illinois Department of Employment Security but, instead, provided only for the claim filed by the Illinois Department of Revenue. The debtor apparently assumed that these two state agencies constituted a single creditor and that the proof of claim filed by the Department of Revenue superseded her scheduling of the claim of the Department of Employment Security. *See* Bankr.R. 3003(c)(4) (filing of proof of claim supersedes any schedul-

---

5. At hearing, counsel for the debtor described the tax liability at issue in this case as follows:

> this [the 1988 liability] is the portion of the tax that should have been paid to the state of Illinois. Since they didn't get paid, they notified the federal, and then the federal picks up because there is a credit. So, in effect, what's happened is both the state and the federal [sic] are trying to collect the same tax. . . .

Trans. of Hrg., Aug. 9, 1995.

6. Section 1111(a) provides:

> (a) A proof of claim . . . is deemed filed under section 501 of this title for any claim . . .

that appears in the schedules . . . except a claim . . . that is scheduled as disputed, contingent, or unliquidated.

11 U.S.C. § 1111(a). Similarly, Bankruptcy Rule 3003(b)(1) provides with regard to filing proofs of claim in Chapter 11 cases:

> The [debtor's schedules] shall constitute prima facie evidence of the validity and amount of the claims of creditors, unless they are scheduled as disputed, contingent, or unliquidated. It shall not be necessary for a creditor . . . to file a proof of claim . . . [unless the creditor's claim is not scheduled or is scheduled as disputed, contingent, or unliquidated.]

Bankr.R. 3003(b)(1); *see* Bankr.R. 3003(c)(2).

ing of that claim pursuant to § 521(1)). However, under the Bankruptcy Code definition of "creditor," each of these state agencies was a separate creditor. *In re Lakeside Community Hosp., Inc.*, 151 B.R. 887, 891–92 (N.D.Ill.1993) (finding specifically that Illinois Department of Revenue and Illinois Department of Employment Security are two different creditors).[7] Thus, the failure of the Illinois Department of Revenue to include in its proof of claim the 1988 unemployment taxes owing to the Illinois Department of Employment Security did not constitute a misrepresentation by the State of Illinois that would support a claim of estoppel in this case. The debtor's scheduling of 1988 unemployment taxes shows she was aware of her tax liability to the Department of Employment Security, and she cannot contend she was misled by the proof of claim filed by another creditor, the Department of Revenue, into believing she had no liability for these taxes. Therefore, the State of Illinois, acting through its Department of Employment Security, may not be estopped from attempting to collect the debtor's outstanding 1988 state unemployment taxes at this time.

For the reasons stated, the Court finds that confirmation of the debtor's Chapter 11 plan did not fix the amount of the debtor's liability for 1988 FUTA and state unemployment taxes and that the United States and the State of Illinois may proceed to collect these taxes notwithstanding the debtor's discharge.

---

7. "Creditor" is defined under the Code as an "entity that has a claim against the debtor," 11 U.S.C. § 101(10), and "entity" includes "governmental unit." 11 U.S.C. § 101(15). "Governmental unit," on the other hand, "means United States; State; ... [or] department, agency, or instrumentality of the United States ... [or of] a State...." 11 U.S.C. § 101(27) (emphasis added). Since this list enumerates separately both "State" and "department [or] agency [of the] State," it appears that Congress intended these units to be treated as distinguishable and, therefore, not the same creditor within the provisions of the statute. *Lakeside*, 151 B.R. at 891.