In re The CIRCLE K CORPORATION; Circle K Convenience Stores, Inc.; Circle K Management Company; Lar–Lin, Inc.; First Circle Properties, Inc.; Utotem, Inc.; Utotem Markets of Arizona, Inc.; U Totem of Alabama, Inc.; U–Tote'M of Colorado Inc.; U–Tote'M of Miami, Inc.; Tic Toc Systems, Inc.; Monterre Properties, Inc.; Shop & Go, Inc.; Circle K General, Inc.; Circle K Hawaii, Inc.; Combined Aviation Co.; Charter Marketing Company (Connecticut); Charter Marketing Company; Mr. B's Oil Co., Inc.; Mr. B's Food Mart, Inc.; NPI Corporation; Old Colony Petroleum Company, Inc.; New England Petroleum Distributors, Inc.; and 44th Street & Camelback Limited Partnership, Debtors.

CIRCLE K STORES, INC., Plaintiff,

v.

The STATE OF MONTANA DEPARTMENT OF REVENUE, Defendant.

Bankruptcy Nos. B–90–5052–PHX–GBN to B–90–5075–PHX–GBN. Adversary No. 96–00042–GBN.

United States Bankruptcy Court, D. Arizona.

July 22, 1996.

---

Susan G. Boswell, Streich Lang, Tucson, AZ, for Plaintiff.

Edward P. Nolde, Assistant Attorney General, Helena, MT, for Defendant.

## ORDER

GEORGE B. NIELSEN, Jr., Chief Judge.

### I

Plaintiff Circle K Stores, Incorporated, a reorganized debtor, filed an adversary complaint against defendant Montana State Department of Revenue, alleging an attempt to collect a discharged tax obligation.

Circle K filed its Montana tax return for the 1986 tax year on February 17, 1987. Subsequently, the Internal Revenue Service ("IRS") audited the company. This federal audit potentially could increase taxes due Montana, since state tax liability is based on federal tax liability. Mont.Code Ann. § 15–31–113. Plaintiff contends it provided actual notice of the IRS audit when it filed its 1988 Montana corporation license tax return on November 30, 1989. Defendant disagrees.

On May 15, 1990, plaintiff and 23 of its subsidiaries filed a consolidated chapter 11 case. The Department was scheduled as holding an unliquidated tax claim. Defendant received notice on September 13, 1990 that the court established January 15, 1991 as the bar date for filing tax claims. Montana failed to file a proof of claim. On June 16, 1993, this court entered an order confirming plaintiff's plan. Defendant did not ap-

peal, object nor move to stay the confirmation order.

Circle K contends confirmation has discharged 1986 state tax liability. 11 U.S.C. §§ 524(a), 524(g), 1141(d)(1)(A). Plaintiff notes the IRS audit was completed on April 17, 1993. The results were reported to Montana on January 24, 1994. Defendant calculates a 1986 corporation tax liability of $45,-430, composed of $23,061 in unpaid taxes and $22,369 in interest. Montana entered a final agency decision on August 29, 1995, finding this amount due and owing.

The department notes neither it nor plaintiff knew if additional amounts were owed until the federal audit results were received. This occurred after the claims bar date.

The confirmation and plan implementation orders entered in June 1993 were well before January 24, 1994, when the department learned the audit results. This was three years after the January 15, 1991 bar date. Montana alleges plaintiff violated Montana Code Annotated section 15–31–506 by failing to timely notify defendant within 90 days of the redetermined audit amount.

Defendant argues the company made an obscure reference to a federal statute of limitations waiver in its 1988 return. Montana reports this occurred in a return filed two years after the 1986 tax year, two years prior to the bankruptcy filing. The department argues a denial of due process occurs by barring a tax claim on insufficient notice.

This Court concludes the department was properly informed of the bankruptcy filing, that it was scheduled as holding an unliquidated claim, and received notice of the claims bar date. Creditor's failure to timely file is not the result of a failure of due process. Accordingly, defendant is enjoined from prosecuting this discharged claim. The Court's complete ruling and reasoning follow.

## II

On November 30, 1989, debtor filed its 1988 Montana tax return. The department received it on December 1, 1989.

The return includes eight questions required of all taxpayers. Questions two through four focus on whether the IRS had determined a tax liability different from that reported in any previous year; whether a statute of limitations waiver is in force; and if an amended federal return had been filed in the last five years.

Question number three reads: "Are any statute of limitations waivers currently in force which have been executed with the Internal Revenue Service? If "Yes" which taxable years are covered and what are the expiration dates of the waivers?"

Circle K answered "yes" and provided the following: "04–30–86 EXPIRES 12–31–90".

Circle K answered "yes" to questions, one and four which inquire: 1. "Are you included as a member of a consolidated group for U.S. Corporation Income Tax Purposes?" and "Has an amended federal return been filed for any of the last five (5) taxable years?". "If "Yes," which taxable year was amended?" Debtor answered: "04–30–84 04–30–85 04–30–87 04–30–88".

Circle K replied "no" to the question whether the IRS had determined taxable income or income tax liability different from that reported for any previous year.

On May 15, 1990, five-and-a-half months after filing the 1988 Montana tax return, debtor filed chapter 11. Circle K listed the Montana claim with other scheduled taxing authorities in its statement of financial affairs as follows:

> Mt–Montana Dept. of Revenue
> Corporate Tax Division
> Mitchell Bldg., Room 332
> Helena, Mt. 59620.
> Liability # 121–477 [1]     Amount: Unliquidated
> Status: Unliquidated.

Debtor reports the agency produced its file under a request for production of documents. The following documents were located:

1. "Notice of Meeting of Creditors and Other Matters." This bears the following file stamp: **"RECEIVED JUN 19 1990 OFFICE OF LEGAL AFFAIRS."** Exhibit C to docket no. 17, plaintiff's reply of February 23, 1996.

---

1. The dash indicates a digit is illegible.

This notice states Circle K would file its statements and schedules by August 28, 1990. Creditors must file claims by a bar date set by the Court, if their claim was listed as disputed, contingent or unliquidated.

2. "Notice of Second Meeting of Creditors, Proof of Claim Filing Deadline, and Other Matters." Debtor reports serving this notice on September 11, 1990. Docket No. 17, Exhibit D. The copy in the agency file bears a **"RECEIVED SEP 13 1990 OFFICE OF LEGAL AFFAIRS"** stamp. That notice states if a claim was listed as disputed, continent or unliquidated, creditor must file a claim by January 15, 1991.[2]

3. "Notice of Amendments to Schedules of Liabilities, Proof of Claim Filing Deadline for Creditors Affected by Amendments, and Other Matters." Debtor served this document on April 22, 1991. Docket 17, Exhibit E. The agency copy bears a **"RECEIVED APR 30 1991 OFFICE OF LEGAL AFFAIRS"** stamp.[3] This notice advises creditors who hold claims scheduled as "unliquidated" to file claims. It also includes a blank claim and instructions.

The notice also states: "You are receiving this notice because you are now being included as a creditor on the amended schedules, or because the amount previously listed for your claim has been reduced on the amended schedules."

If the claim was unlisted on the schedules, or was listed as disputed, contingent, unliquidated, or in an amount or priority the creditor believes is incorrect, such creditor must file a claim by the deadline. The notice was accompanied by a separate statement showing how the particular claim is listed on the amended schedules.

The notice established a deadline of May 21, 1991, stating:

Unless your claim is correctly listed on the amended schedules, or unless you have previously filed a proof of claim evidencing your claim against the Debtors, failure to file a proof of claim by May 21, 1991 will result in the barring of your claim, and you

will not be treated as a creditor in these cases for purposes of voting or distribution.... The address of the Bankruptcy Court is set forth in the instructions on the reverse side of the proof of claim form.

As to the "separate statement" indicating how the claim is listed, the attachment reads:

YOU HAVE RECEIVED THIS NOTICE BECAUSE THE DEBTORS HAVE REASON TO BELIEVE THAT YOU MAY WISH TO ASSERT A CLAIM. YOU HAVE BEEN INCLUDED IN THE DEBTORS' SCHEDULES WHICH WERE FILED WITH THE BANKRUPTCY COURT AS HAVING A CLAIM, IF ANY, THAT IS UNLIQUIDATED AND DISPUTED. THEREFORE, IF YOU BELIEVE THAT YOU HAVE A CLAIM AGAINST THE DEBTORS, YOU MUST FILE THE ENCLOSED PROOF OF CLAIM BY THE DATE AND IN THE MANNER SET FORTH IN THE ENCLOSED NOTICE.

Montana did not timely file a claim. Given this, has Circle K done enough to inform the agency of the pendency of this case and the claims bar date?

### III

■ A discharge operates as an injunction against the commencement or continuation of an action, employment of process, or an act, to collect, recover, or offset a discharged debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2).

■ Section 524(a)(2) acts as a permanent injunction to all actions to collect discharged debts. *Poule v. Registrar of Contractors of the State of California (In re Poule)*, 91 B.R. 83, 87 (9th Cir. BAP 1988).

Section 1141(a) provides:

[T]he provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or

---

2. According to Circle K, the January 15, 1991 bar date is highlighted, presumably by a departmental employee.

3. Additionally, it bears an April 29, 1991 received stamp of the Montana Attorney General.

interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a).

■ The confirmation order issued by this court was a final judgment. *Heritage Hotel Limited Partnership I v. Valley Bank of Nevada (In re Heritage Hotel Partnership I)*, 160 B.R. 374, 377 (9th Cir. BAP 1993), *aff'd*, 59 F.3d 175 (9th Cir.1995). Like final judgments, confirmed plans of reorganization are binding on all parties. Issues that could have been raised concerning the plan are barred by res judicata. 160 B.R. at 377. *Multnomah County v. Ivory (In re Ivory)*, 70 F.3d 73 (9th Cir.1995), dealt with the res judicata effect of a chapter 13 confirmation. "Even assuming that the order confirming the plan *was in error* to the extent it enabled the debtor to redeem property subsequent to both the expiration of the redemption right provided by state law and the sixty day window created by 11 U.S.C. 108(b) ... *res judicata precludes the County from bringing what amounts to a collateral challenge to that order.*" 70 F.3d at 75 (emphasis added).

*Trulis v. Barton*, 67 F.3d 779, 785 (9th Cir.1995), succinctly states: "Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to **res judicata** effect...." (Emphasis in original.)

## IV

Notwithstanding sections 524(a)(2) and 1141, what is fundamentally involved is whether Montana received due process. If so, its failure to participate in the confirmation process or timely file a proof of claim renders its 1986 claim dischargeable.

■ Generally, a known contingent creditor without formal notice is not bound by a discharge order. The fact a creditor has knowledge a bankruptcy is ongoing does not excuse the requirement for formal notice. *Levin v. Maya Construction (In re Maya*

*Construction Company)*, 78 F.3d 1395, 1399 (9th Cir.1996). Due process requires that a creditor receive notice of any bankruptcy which is to be accorded finality. *Fireman's Fund Mortgage Corporation v. Hobdy (In re Hobdy)*, 130 B.R. 318, 320 (9th Cir. BAP 1991). Such notice must reasonably advise a party of the pendency of a case and provide an opportunity for objections. 130 B.R. at 320.

■ The noticing requirements imposed by the Code and Rules ensure that creditors can be expected to learn of important actions in a bankruptcy that affect their rights. *Borsdorf v. Fairchild Aircraft Corp. (In re Fairchild Aircraft Corp.)*, 128 B.R. 976, 984 (Bankr.W.D.Tex.1991). A debtor must list all creditors whose identity and claim are known. The burden is on debtor to give formal notice. A creditor who is not given notice, even with actual knowledge of the case, does not have a duty to investigate and inject himself into the proceedings. Those whose entitlements will be destroyed by the judgment are entitled to notice. *In re Maya Construction*, 78 F.3d at 1399.

■ Has debtor met this burden? In measuring the scope of debtor's duty, the court can look to cases construing whether a debt is excepted from discharge under section 523(a)(3).[4] Debtor need not act in bad faith in not properly listing a debt for it to be excepted from discharge. *Lubeck v. Littlefield's Restaurant Corp. (In re Fauchier)*, 71 B.R. 212, 215 (9th Cir. BAP 1987). The test is whether the debt was scheduled in time to permit a timely request for a determination of discharge or a timely proof of claim. To be properly listed, the name and address of the creditor must be stated. The burden is on debtor to use reasonable diligence in completing its schedules. *Id.*

Using this standard, Circle K used reasonable diligence in identifying Montana's claim in the bankruptcy schedules. Montana had ample time to protect its interests.

The claim was specifically listed in debtor's schedules as unliquidated. Montana received

---

**4.** This section provides that the debt of an individual is not discharged if neither listed nor scheduled in time to file a complaint or a proof of claim. 11 U.S.C. § 523(a)(3).

notice to file a timely claim. Notices were properly sent to the department at its corporate tax division. Pertinent notices were received by the Office of Legal Affairs. Docket 17, *supra.* This same office submitted a proof of claim for tax year 1990. Docket 21, Exhibit F.

Debtor met notice requirements under these facts. Circle K had thousands of creditors.[5] This does not lessen the duty of the debtor to file a list of creditors, schedules of assets, liabilities, income, and expenditures, and a statement of financial affairs. *In re Mohring,* 142 B.R. 389, 394 (Bankr. E.D.Cal.1992), *aff'd,* 153 B.R. 601 (9th Cir. BAP 1993); *aff'd,* 24 F.3d 247 (9th Cir.1994). But such a large creditor body is a factor, however, in determining what is reasonable in a particular case. With thousands of creditors, debtor listed all similarly-situated taxing authorities as having contingent, unliquidated claims without specifying particular tax years. It was possible a taxing agency might claim contingent, unliquidated claims covering many years. Debtor's expressed intent was to put authorities on notice they might have a contingent or unliquidated claim. Taxing agencies were thus required to review their files. Docket 22, n. 4, at 4–5.

The Department complains debtor failed to fully comply with state law in reporting the IRS audit. That may be true. Regardless, for bankruptcy purposes, it is federal, not state, law which defines the requisite notice to be afforded creditors.

The Montana authority is a sophisticated taxing entity, presumably versed in bankruptcy. When apprised it has an unliquidated claim in a pending bankruptcy, and must act by a date certain, it should do so. At a minimum, the department could have filed a contingent tax claim, reserving the right to amend when it completed its own review or heard concerning audit results.

In short, debtor listed the department as holding an unliquidated claim. Montana had an obligation to do something. *Jones v. United States Department of Treasury (In*

*re Jones),* 134 B.R. 274, 279 (N.D.Ill.1991). Given this clear notice, Montana ignored the proceedings at its peril. 134 B.R. at 279.

Assuming debtor failed to list the tax obligation in complete detail, creditor had notice of the filing, the bar date and ample opportunity to file a claim. The agency waited until well after the confirmation order to become active. While this may be appropriate in a nonbankruptcy, tax collection perspective, it does not excuse a failure to act in bankruptcy. After the claim became liquidated following the audit, an amended claim could have been filed, superseding a timely original claim.

### V

Defendant was not deprived of due process. It was apprised of the filing, had notice debtor scheduled it as an unliquidated claimant, and received notice of the bar date. Montana's failure to respond is not the result of a failure of due process. The claim is discharged under section 1141. This creditor is enjoined from prosecuting its discharged claim. Defendant's motion for relief from stay is denied.

Plaintiff will lodge and serve a proposed implementing order. Each party will bear their own costs and fees in this adversary.

---

5. A circumstance defendant can appreciate, as its papers speak of the thousands of tax returns it must process as well. Docket No. 19 at 4.