In re Lee Ardell WOOD, faw Wood & Morimoto, a professional corporation, Debtor.

United States of America, Appellant,

v.

Lee Ardell Wood, faw Wood & Morimoto, a professional corporation, Appellee.

No. CV–98–2604 MMM.

United States District Court,
C.D. California,
Western Division.

July 15, 1999.

Edward M Robbins, Jr., Gregory A Roth, AUSA Office of U.S. Attorney, Tax Division, Los Angeles, CA, for United States of America, appellant.

Brad D Krasnoff, Brad D Krasnoff Law Offices, Encino, CA, for Lee Ardell Wood, faw Wood & Morimoto, a professional corporation, appellee.

## ORDER REVERSING BANKRUPTCY COURT'S ORDER GRANTING DEBTOR'S EMERGENCY MOTION RE VIOLATION OF ORDER CONFIRMING PLAN

MORROW, District Judge.

This is an appeal by the United States (the "IRS") from a September 23, 1997 order of the United States Bankruptcy Court for the Central District of California.[1] This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(b) and (c). The appeal charges that the bankruptcy court erred in holding that the IRS was bound by the terms of the Chapter 11 debtor's confirmed plan of reorganization, and barred from collecting taxes due and

owing for tax year 1995 in any manner inconsistent with the confirmed plan.

The IRS had notice of Wood's Chapter 11 Amended Plan of Reorganization, which provided the manner and method in which Wood's 1995 taxes would be paid. Nonetheless, the 1995 taxes were a post-petition liability that could not be collected from the bankruptcy estate. Even had they been properly collected from the estate, the taxes were a nondischargeable debt under 11 U.S.C. §§ 1141(d)(2) and 523, and thus could have been collected outside the plan in any event. These facts, and the further fact that the Anti–Injunction Act precludes entry of an order "restraining the assessment or collection of any tax," require reversal of the bankruptcy court's order insofar as it restrains the IRS from attempting to collect Wood's 1995 tax liability.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Lee Ardell Wood ("Wood"), an attorney, filed a voluntary Chapter 11 bankruptcy petition in 1993.[2] Thereafter, Wood filed a plan of reorganization, which he withdrew in July 1995 prior to its being confirmed. The Chapter 11 proceeding was later dismissed.[3] Facing collection pressure from the IRS, Wood filed a second Chapter 11 petition on October 24, 1995.[4]

### A. Wood's Plan of Reorganization

On January 23, 1996, the bankruptcy court established March 29, 1996 as the last date on which to file a proof of claim in Wood's Chapter 11 proceeding.[5] On April 23, 1996, the IRS filed a proof of claim for taxes due for periods ranging from 1989 to 1994. The IRS subsequently admitted

---

1. Appellant's Excerpts of Record ("E.R.") at 403.

2. *Id.* at 13.

3. *Id.* at 13–14. The court takes judicial notice of the files and records in Wood's bankruptcy proceeding. Fed.R.Evid. 201.

4. E.R. at 14.

5. *Id.* at 1–2.

that this filing was "untimely." [6] No claim was ever filed for 1995 taxes.

On April 3, 1996, Wood filed an initial plan of reorganization.[7] The plan reflected that Wood had unpaid federal income tax liabilities for taxable years up to and including 1994. It made no mention of liability for tax year 1995.[8] Additionally, Wood did not at any time file a bifurcated tax return for tax year 1995, as permitted by 26 U.S.C. § 1398(d)(2)(A).[9]

On July 31, 1996, the IRS filed an objection to Wood's proposed plan on the ground that the tax liabilities were not properly treated.[10] On August 13, 1996, the IRS withdrew its objection because "the Service's proof of claim dated April 17, 1996 was not timely filed." [11] Confirmation of Wood's Plan of Reorganization was nevertheless denied by the bankruptcy court at a hearing on August 28, 1996.[12]

### B. Wood's Amended Plan of Reorganization

On October 31, 1996, Wood filed an Amended Plan of Reorganization.[13] As respects the payment of taxes due the IRS, including "unpaid income taxes for the tax year 1995," the Amended Plan provided that "the [IRS] shall be granted a continuing lien on all currently owned and any after-acquired property as security for its priority tax claims including taxes due for 1995." [14] It continued: "The priority tax claim will then be treated as a Class 2 allowed Secured Claim and paid in accordance with the provision for payment of Class 2 claims." [15] Class 2 allowed Secured Claims were to be paid in monthly installments of $1,250 for the first fourteen months of the plan, at $3,250 for months fifteen through thirty-three, and at $5,250 thereafter until paid in full. The balance was to bear interest at an annual rate of 8%.[16]

The bankruptcy court found, and the IRS does not dispute, that the Amended Plan was properly served on the IRS. The IRS did not file any objection to the Amended Plan.[17] On March 26, 1997, the bankruptcy court conducted a hearing at which it approved confirmation of the Amended Plan,[18] and entered an order of confirmation on June 11, 1997.[19]

In April 1997, the IRS advised Wood's counsel that, following confirmation of the Amended Plan, collection activity would begin with respect to taxes due and owing for the 1995 tax year. Wood's liability, including penalties, totaled $73,194.34 plus interest as of July 2, 1997.[20] On June 9, 1997, the IRS issued a Final Levy Notice for tax years 1989 through 1995.[21] On June 26, 1997, Wood filed an Emergency Motion seeking an order from the bankruptcy court "that the [IRS] is in violation of the [Confirmed Plan]." [22]

---

6. *Id.* at 86–87; 102–03.

7. *Id.* at 51–85.

8. *Id.* at 57.

9. *Id.* at 345; Appellee's Brief at 4. The effect of such a filing would have been to bifurcate Wood's 1995 taxable year into two taxable years, the first of which would have ended on the day before his Chapter 11 case commenced, and the second of which would have begun on the following day.

10. E.R. 95–101.

11. *Id.* at 102–03.

12. *Id.* at 439–40.

13. *Id.* at 164.

14. *Id.* at 170.

15. *Id.*

16. *Id.* at 171.

17. Appellant's Opening Brief at 7.

18. E.R. 441.

19. E.R. 308.

20. E.R. 350.

21. Appellee's Brief at 4.

22. E.R. at 323.

The IRS responded on July 3, 1997,[23] and the bankruptcy court heard initial argument that day. Thereafter, it continued the hearing to August 6 because the IRS had not been properly served.[24] On July 25, 1997, Wood filed a supplemental memorandum in support of his motion.[25] On August 3, 1997, the IRS filed a detailed response.[26] At the August 6 hearing, Wood clarified that he sought an order that any effort by the IRS to collect 1995 taxes violated the confirmed plan of reorganization.[27]

### C. Bankruptcy Court's Order

At the hearing on Wood's motion, the bankruptcy court cited cases holding that confirmed plans of reorganization, like final judgments, "are binding on all parties and issues that could have been raised concerning such plans are barred by res judicata."[28] See, e.g., *Trulis v. Barton*, 67 F.3d 779 (9th Cir.1995);[29] *In re Circle K Corp.*, 198 B.R. 784 (Bkrtcy.D.Ariz.1996). Based on this authority, the bankruptcy court made findings and directed counsel to prepare an order providing that the IRS "had notice of the plan provisions and did not timely object; [that the IRS] is bound by the terms of the confirmed plan;" and "that the Service is barred from enforcing its claims in any manner other than as provided for in the confirmed plan."[30]

The IRS appeals this order only to the extent it addresses the payment of 1995 taxes. The Service contends the bankruptcy court's order should be reversed because the taxes are a post-petition liabil-

ity of the debtor, and because the Anti–Injunction Act prohibits entry of an order barring the collection of taxes.[31]

## II. DISCUSSION

### A. Standard of Review

■ The bankruptcy court's findings of fact are reviewed for clear error. Its conclusions of law are reviewed *de novo*. *Henderson v. Buchanan*, 985 F.2d 1021, 1023 (9th Cir.1993).

### B. Post–Petition Taxes

■ There is no question that Wood's federal income tax liabilities are nondischargeable under 11 U.S.C. § 523. The parties dispute, however, when and how those taxes may be collected. The IRS maintains that, because the taxes are a nondischargeable debt, they may be collected outside the reorganization plan, citing *In re Gurwitch*, 794 F.2d 584 (11th Cir.1986), *In re Adelman*, 90 B.R. 1012 (Bankr.S.D.1988), and *In re Howell*, 84 B.R. 834 (Bankr.M.D.Fla.1988). Wood concedes the tax liability is nondischargeable. He argues, however, that its collection is controlled by the specific provisions of the reorganization plan, citing *In re Martin*, 150 B.R. 43 (Bankr.S.D.Cal.1993) and *In re Mercado*, 124 B.R. 799 (Bankr. C.D.Cal.1991). All parties agree that taxes owing for years 1987 through 1994 are pre-petition debt subject to the reorganization plan.[32] At issue is whether the *post-petition* debt for 1995 taxes may be collected outside the plan.[33]

23. *Id.* at 342–50.

24. *Id.* at 414–20.

25. *Id.* at 351–361.

26. *Id.* at 362–402.

27. *Id.* at 430.

28. *Id.* at 432–33.

29. The *Trulis* opinion had previously been amended and superceded by *Trulis v. Barton*, 107 F.3d 685 (9th Cir.1995). The amended

version of the opinion incorporated the holding upon which the bankruptcy court relied.

30. E.R. at 404.

31. Wood defends this appeal *pro se*.

32. The IRS tacitly concedes this fact by confining its appeal of the bankruptcy court's order to tax year 1995.

33. Wood's emergency motion addressed both the pre-petition 1989–1994 tax liability and the post-petition 1995 liability. The bank-

Initially, there is no question that the 1995 taxes are a post-petition liability. Wood filed his Chapter 11 petition on October 24, 1995. Given this fact, Wood could have filed an election bifurcating 1995 into two tax years as permitted by 26 U.S.C. § 1398(d)(2)(A),[34] at any time prior to April 15, 1996.[35] He admits he did not do so. Because Wood failed to bifurcate the tax year, his entire 1995 tax liability is a post-petition debt. 26 U.S.C. § 1398(d)(2)(A). "If the debtor makes the election, the tax liability attributable to the pre-petition year constitutes a priority claim against the estate; but if he does not, the entire liability for the year of the bankruptcy filing is a claim against the debtor ... not collectible from the estate." *In re Haedo*, 211 B.R. 149, 152 (Bkrtcy. S.D.N.Y.1997). See also *In re Johnson*, 190 B.R. 724, 726 (Bankr.D.Mass.1995) ("A debtor's failure to make an election under § 1398(d) makes the entire tax liability a post-petition liability").

Wood's failure to make the election "leaves the IRS with a post-petition tax claim against [Wood] individually, [but] with no claim whatsoever against the[ ] bankruptcy estate for any part of the [1995] tax liability." *In re Johnson, supra*, 190 B.R. at 726. See also *In re Smith*, 210 B.R. 689, 692 (Bankr.D.Md.1997); *In re Haedo, supra*, 211 B.R. at 152; *In re Moore*, 132 B.R. 533, 534–35 (Bankr. W.D.Pa.1991); *In re Mirman*, 98 B.R. 742, 745 (Bankr.E.D.Va.1989); *In re Turboff*, 93 B.R. 523, 525 (Bankr.S.D.Tex.1988). In

light of this fact, the question is whether, by including provisions in the amended reorganization plan purporting to govern the payment of this post-petition debt, Wood could control the timing and method of the taxes' payment.

Had Wood not attempted to control payment of the 1995 taxes through the plan, the IRS could clearly have collected the debt outside the plan. This would be true even if the taxes were a liability of the bankruptcy estate. See, e.g., *In re DePaolo*, 45 F.3d 373, 375 (10th Cir.1995) ("The party to whom [a nondischargeable] debt is owed is entitled after confirmation to enforce his or her rights as they would exist outside of bankruptcy" (quoting *In re Amigoni*, 109 B.R. 341, 345 (Bankr.N.D.Ill. 1989)); *In re Fein*, 22 F.3d 631, 633 (5th Cir.1994) ("confirmation does not discharge an individual debtor from any debt excepted from discharge under 11 U.S.C. § 523"); *In re Grynberg*, 986 F.2d 367, 370 (10th Cir.), cert. denied, 510 U.S. 812, 114 S.Ct. 57, 126 L.Ed.2d 27 (1993) ("Neither the rules nor the bar order prevents a creditor holding a nondischargeable debt who has not filed a proof of claim from collecting outside the bankruptcy"); *In re Gurwitch*, 794 F.2d 584, 585 (11th Cir. 1986) ("The Bankruptcy Code makes clear under 11 U.S.C. § 1141(d)(2) that the confirmation of a plan of reorganization does not fix tax liabilities made nondischargeable under 11 U.S.C. § 523").[36]

ruptcy court held that the IRS was bound by the terms of the reorganization plan in implementing its tax collection efforts.

**34.** Appellee's Brief at 4. Section 1398(d)(2)(A) provides:
(A) In general.—Notwithstanding section 442, the debtor may (without the approval of the Secretary) elect to treat the debtor's taxable year which includes the commencement date as 2 taxable years—
(i) the first of which ends on the day before the commencement date, and
(ii) the second of which begins on the commencement date. 26 U.S.C. § 1398(d)(2)(A).

**35.** Section 1398(d)(2)(D) provides that "[a]n election under subparagraph (A) or (B) may be made only on or before the due date for filing the return for the taxable year referred to in subparagraph (A)(i). Any such election, once made, shall be irrevocable." 26 U.S.C. § 1398(d)(2)(D).

**36.** There is no question that the tax liability would be a nondischargeable debt. See 11 U.S.C. § 523(a)(1)(A). See also *In re DePaolo, supra*, 45 F.3d at 375.

Wood's 1995 federal tax liability, however, was specifically included in the Amended Plan, which purported to control the method and timing of its collection. The IRS failed to object to the plan even though it was properly served with the document before confirmation. Having failed to challenge the amended reorganization plan, the IRS simply informed Wood it intended to commence collection activities with respect to his 1995 taxes. Wood contends that, under these circumstances, the IRS is bound by the provisions of the plan, particularly since they do not purport to discharge any portion of the tax liability but only to control the timing of its payment. Wood relies heavily on *In re Martin*, 150 B.R. 43 (Bankr.S.D.Cal. 1993), and *In re Mercado*, 124 B.R. 799 (Bankr.C.D.Cal.1991). Neither decision, however, is dispositive of the outcome in this case.

In *In re Martin*, the bankruptcy court enjoined the IRS from attempting to collect pre-petition taxes outside the terms of the debtor's confirmed reorganization plan. The IRS had filed a proof of claim covering the taxes, and had objected to the terms of the reorganization plan on the basis that the debtors had never filed tax returns for the years in question. To resolve this objection, the Service and the debtors stipulated in open court that the debtors would file tax returns for the relevant years, that the IRS would then file supplemental or amended proofs of filing to which the debtors had a right to object. This agreement was incorporated into the terms of an amended plan, and the plan was confirmed by the bankruptcy court.

*In re Martin, supra,* 150 B.R. at 44–45. The IRS subsequently filed amended proofs of claim showing no tax due. Two and a half years later, the IRS issued notices of deficiency. These were followed by notices of levy, at which point the debtors filed an adversary proceeding to enjoin collection of the taxes

The bankruptcy court noted that the IRS had "submitted its claim to the jurisdiction of the bankruptcy court," and could not "unilaterally withdraw the jurisdiction by employing unapproved, less confining procedures." *Id.* at 46. On this basis, it distinguished cases such as *In re Stuber,* 142 B.R. 435, 441 (Bankr.D.Kan.1992), and *In re Video Gaming, Inc.,* 123 B.R. 889, 891 (Bankr.D.Nev.1991).[37] In each of these cases, the IRS did not submit to the bankruptcy court's jurisdiction by filing a timely proof of claim, and the court held that the agency could pursue collection of the debtor's nondischargeable tax liability outside the plan. The *In re Martin* court stated that by contrast, "the IRS [had] chose[n] to participate in the plan" of reorganization for the debtors before it, and to enter into an agreement regarding the "procedures [that would be used] for determining the amount of its nondischargeable claim." *In re Martin, supra,* 150 B.R. at 46–47. It noted that "the case law is clear that the IRS is authorized to enter into agreements regarding tax obligations and such agreements are final and binding." *Id.* at 45. Consequently, it held the Service to the terms of its agreement with the debtors.

**37.** The *In re Martin* court also purported to distinguish *In re Gurwitch, supra,* and *In re Howell,* 84 B.R. 834 (Bankr.M.D.Fla.1988) on this basis. In each of those cases, however, the creditor holding a nondischargeable debt filed a proof of claim, and the court concluded nonetheless that it was entitled to collect the debt outside the reorganization plan. See *In re Gurwitch, supra,* 794 F.2d at 585 (court permitted post-confirmation efforts by IRS to collect withholding taxes despite the fact that the IRS had filed a proof of claim for both income and withholding taxes, and 100% of the claim had been allowed); *In re Howell, supra,* 84 B.R. at 835 ("This Court concludes . . . that the provision in the Modified Plan which purports to bind NCNB to monthly payments of $300.00 on the $21,266.98 nondischargeable debt does not comply with the applicable provisions of the Code and that, although NCNB is entitled to participate in the distribution under the plan to unsecured creditors, it also has the right to execute or collect on its nondischargeable judgment debt free from the injunctive and other provisions of the plan").

Here, of course, the IRS did not submit to the jurisdiction of the bankruptcy court by filing a claim for 1995 taxes. Nor did it enter into any agreement with Wood regarding the manner in which such taxes would be collected or indicate its willingness to be bound by the terms of the reorganization plan. *In re Martin*, therefore, does not support Wood's claim that the IRS is bound by the terms of the amended reorganization plan as respects the collection of 1995 taxes.[38]

Similarly, *In re Mercado* does not counsel restraining the IRS's efforts to collect the 1995 liability. There, the issue was whether a creditor holding a nondischargeable judgment could execute on the debt outside the terms of the reorganization plan. The bankruptcy court noted that there were two views of the effect of 11 U.S.C. § 1141(d)(2). The "broad" view holds that the statute "excepts a nondischargeable debt from any effects of the [reorganization] plan." *In re Mercado, supra*, 124 B.R. at 801. The "narrow" view asserts that "the effect of § 1141(d)(2) should be limited to holding the debt nondischargeable. That is, the plan cannot discharge the debt, but the claimant may otherwise subject the debt to the provi-

---

**38.** Other courts have specifically rejected any suggestion that principles of res judicata prohibit collection of taxes outside a reorganization plan. See, e.g., *In re Taylor*, 132 F.3d 256, 262 (5th Cir.1998) (because debtor failed to move under 11 U.S.C. § 505 for a determination of his tax debt, his "Plan [was] not res judicata as to the amount of his liability ..., and the IRS [was] not barred from proceeding against him to collect" the sum due); *In re DePaolo*, 45 F.3d at 376 ("While principles of res judicata apply generally to bankruptcy proceedings, the plain language of §§ 1141 and 523 forbid the application of those principles to the facts of this case.... Congress has determined that the IRS may make a claim for taxes for a particular year in a bankruptcy proceeding, accept the judgment of the bankruptcy court, then audit and make additional claims for that same year, even though such conduct may seem inequitable or may impair the debtor's fresh start"); *In re Fein*, 22 F.3d at 633 ("Because the Bankruptcy Code specifically makes this claim nondischargeable, ... res judicata does not bar it"); *In re Grynberg, supra*, 986 F.2d at 370 (rejecting debtor's argument that the bar order was res judicata against a later claim by the IRS for gift taxes); *In re Gurwitch, supra*, 794 F.2d at 585 ("Appellant's res judicata argument is not persuasive. The Bankruptcy Code makes clear under 11 U.S.C. § 1141(d)(2) that the confirmation of a plan of reorganization does not fix tax liabilities made nondischargeable under 11 U.S.C. § 523"); *In re McConahey*, 192 B.R. 187, 191 (Bankr.S.D.Ill.1996) ("While principles of res judicata apply generally to bankruptcy proceedings, the plain language of §§ 1141(d)(2) and 523(a)(1)(A) forbids the application of those principles here"). The result in these cases is consistent with 11 U.S.C. § 1141(a), which states: *"Except as provided in subsections (d)(2) and (d)(3) of this section*, the provisions of a con-firmed plan bind the debtor, ... and any creditor, ... whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan." (Emphasis added.) Section 1141(d)(2), of course, provides that tax liabilities of the kind the IRS seeks to collect here are nondischargeable. Similarly, courts have declined to apply estoppel principles to bar the IRS from proceeding to collect a nondischargeable tax liability outside a confirmed plan of reorganization. See, e.g., *In re Taylor*, 132 F.3d at 263 (identifying the factors that must be proved to establish estoppel against a governmental agency, and holding that the IRS's failure to file a proof of claim was not the type of affirmative misconduct that would support a finding of estoppel); *In re DePaolo, supra*, 45 F.3d at 376–77 (similarly identifying factors, and holding that the IRS's filing of a proof of claim for taxes in a lesser amount than it sought to collect following confirmation of the debtor's reorganization plan was not affirmative misconduct supporting estoppel); *In re McConahey, supra*, 192 B.R. at 191 (distinguishing *In re Martin*, and declining to find an estoppel because the IRS did not misrepresent the amount of the debtor's federal tax liability in its proof of claim and the debtor did not rely on the amount to her detriment). Here, there has been no showing of any affirmative misconduct on the part of the IRS. It never filed a claim for 1995 taxes in the bankruptcy proceeding because it believed they were a postpetition liability, and did nothing else upon which Wood could affirmatively have relied. See *In re DePaolo, supra*, 45 F.3d at 377 (to demonstrate affirmative misconduct, the debtor must show that the government affirmatively misrepresented or concealed a material fact; mere negligence, inaction or delay will not suffice).

sions of a confirmed plan." *Id.* The court there adopted the latter approach.

In *In re Mercado,* the confirmed plan of reorganization enjoined holders of nondischargeable debts from attempting to collect such debts outside the plan. *Id.* The court upheld the validity of such a provision, stating:

" § 1141(d)(2) preserves the right of a creditor holding a nondischargeable debt to full payment. It does not provide that the provisions of a confirmed plan cannot affect the rights of such creditor or that, as the bankruptcy court in *In re Howell,* 84 B.R. 834 (Bankr.M.D.Fla. 1988) stated, '... [A] creditor who has a debt excepted from discharge under section 523 cannot be bound by the provisions of a confirmed plan.' " *Id.* at 801–02.

The *In re Mercado* court concluded that the creditor's right to payment in full was adequately protected by its ability to object to and vote on the plan, and by the requirements that no plan be approved unless it is fair, equitable and feasible. *Id.* at 803. Consequently, it held that the plan could control the method and timing of payment of the debt.

In reaching this conclusion, the court conducted a detailed analysis of cases that had addressed the same or a similar issue. It specifically distinguished *In re Gurwitch, supra,* and *In re Becker's Motor Transportation, Inc.,* 632 F.2d 242 (3d Cir. 1980) on the basis that they were "tax cases" and relied "on the Anti–Injunction Statute as a limitation on the power of the bankruptcy court." *In re Mercado, supra,* 124 B.R. at 805.[39] The same distinction applies here, and is the reason why *In re Mercado* is not controlling in this case.

## C. Anti–Injunction Act

Like the bankruptcy court, Wood relies on *In re Circle K Corp.,* 198 B.R. 784, 789 (Bankr.D.Ariz.1996), and *Trulis v. Barton,* 107 F.3d 685, 691 (9th Cir.1995) for the proposition that confirmed reorganization plans, like final judgments, are binding on all parties, and issues that could have been raised concerning such plans but were not are barred by the doctrine of res judicata.[40] Neither *In re Circle K* nor *Trulis* involved the collection of federal taxes, however, nor the special authority granted the IRS by the Anti–Injunction Act to collect taxes and dispute entitlement later.

The Anti–Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). The United States Supreme Court has stated that "[t]he manifest purpose of section 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner, the United States is assured of prompt collection of its lawful revenue." *Enochs v. Williams Packing and Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962).

Some courts have recognized a judicially created exception to this doctrine, which permits the bankruptcy court to enjoin IRS collection activity against a debtor if it would "interfere[ ] with the orderly administration of the estate or the rehabilitation of the creditor." *In re Major Dynamics, Inc.,* 14 B.R. 969, 970 (Bankr.S.D.Cal.1981). See also *In re Bostwick,* 521 F.2d 741, 744 (8th Cir.1975) ("we are convinced that the Bankruptcy Court must have the power to enjoin the assessment and/or collection of taxes in order to protect its jurisdiction, administer the bankrupt's estate in an orderly and efficient manner, and fulfill the ultimate policy of the Bankruptcy Act"). In granting Wood's motion, the bankruptcy court

---

**39.** Indeed, the court expressly stated that it "agreed with the[ ] holdings" in these cases. *Id.*

**40.** E.R. at 432–33.

made no finding that enjoining the IRS's collection efforts outside the plan was necessary to ensure the plan's success. Instead, it employed *res judicata* principles to enjoin collection. Exceptions to the Anti–Injunction Act are to be narrowly construed. *In re American Bicycle Assoc.*, 895 F.2d 1277, 1281 (9th Cir.1990). Assuming *arguendo* that courts may enjoin the collection of taxes outside a reorganization plan where the collection activity would jeopardize the plan's success or frustrate the purpose of rehabilitating the debtor, the bankruptcy court failed to make any specific finding that such consequences would result, and thus that an injunction was warranted.[41]

Indeed, it is unclear following the Supreme Court's decision in *United States v. Energy Resources,* 495 U.S. 545, 551, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990), whether any such exception to the Anti–Injunction Act exists. As the court recognized in *In re Mercado* (see 124 B.R. at 802), *Energy Resources* holds that so long as the bankruptcy court does not exercise its equitable authority to adjust debtor-creditor relationships "in conflict with a Code provision or any other federal law that must be taken into consideration" (*In re Mercado, supra*), it has broad power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code (11 U.S.C. § 105(a)). With limited exceptions, the Anti–Injunction Act specifically prohibits a court from restraining the IRS's collection of taxes. Thus, the *In re Mercado* court concluded that the statute limits the bankruptcy court's power to control the method and timing of payment of a nondischargeable tax debt by enjoining collection outside a reorganization plan. *In re Mercado, supra,* 124 B.R. at 805.

## III. CONCLUSION

Because Wood's 1995 taxes were a post-petition liability of the debtor and could not be collected from the bankruptcy estate, because they were in any event non-dischargeable under §§ 1141(d)(2) and 523 and thus could have been collected outside the plan, and because the Anti–Injunction Act precludes an injunction of the type the bankruptcy court issued here, the court reverses the bankruptcy court's order insofar as it restrains the IRS from attempting to collect Wood's 1995 tax liability.

---

**41.** The IRS contends that the Ninth Circuit's decision in *In re American Bicycle Assoc.,* 895 F.2d 1277 (9th Cir.1990), is dispositive of this case. It is not. *In re American Bicycle* addressed the bankruptcy court's power to enjoin efforts to collect taxes from the *non-debtor* responsible officer of a debtor corporation, and the court distinguished cases addressing the bankruptcy court's power to enjoin collection efforts aimed at debtors on this basis. *Id.* at 1279. Because Wood is the debtor in this case, *American Bicycle* is inapposite.